**UNITED STATES of America,
Plaintiff-Appellee,**

v.

**Neva J. JACKSON, a/k/a Neva J.
Stewart, Defendant-Appellant.**

**No. 28396.**

United States Court of Appeals,
Fifth Circuit.

March 18, 1970.

Leonard Moriber, Miami, Fla., for appellant.

Earl Faircloth, Atty. Gen., State of Florida, Richard E. Gerstein, State Atty., Miami, Fla., for appellee.

Before BELL, AINSWORTH, and GODBOLD, Circuit Judges.

**306**

Keith Marks, Dallas, Tex., for defendant-appellant.

Eldon B. Mahon, U. S. Atty., B. H. Timmins, Jr., Cecil S. Mathis, Asst. U. S. Attys., Fort Worth, Tex., for plaintiff-appellee.

Before THORNBERRY, COLEMAN, and INGRAHAM, Circuit Judges.

COLEMAN, Circuit Judge:

Upon an information which the trial court had sua sponte ordered filed, Neva J. Jackson was found guilty of criminal contempt of court and sentenced to serve thirty days in a jail type institution. We find that the government failed to carry its burden of proof and we reverse the conviction.

The information read as follows:

"THE UNITED STATES ATTORNEY CHARGES:

"From on or about May 3, 1968 through January 16, 1969 the defendant NEVA J. JACKSON, Office Manager and Transfer Agent for United Australian Oil, Inc., a corporation organized and incorporated under the laws of the State of Delaware with its principal place of business in the City of Dallas, State of Texas, and private secretary for the chief executive officer of United Australian Oil, Inc., has been, within the Northern District of Texas and elsewhere, en-

gaged in conduct in criminal contempt of an order of this Court entered May 3, 1968 in an action captioned Securities and Exchange Commission v. United Australian Oil, Inc., Civil Action File No. CA 3–2572–B, which order permanently enjoined United Australian Oil, Inc., its officers, agents, servants, attorneys, and assigns from further violations of the registration provisions of the Securities Act of 1933 [15 U.S.C. 77e].

"The defendant has wilfully disobeyed said order of this Court and of the lawful authority of the United States in that notwithstanding notice of said order, instead of ceasing and desisting from engaging in the acts and practices forbidden by said order, defendant Neva J. Jackson has continued to engage in such acts and practices, directly and indirectly, in the manner hereinafter more fully described:

"From on or about May 3, 1968 until on or about January 16, 1969 the defendant, directly and indirectly, continued to offer for sale and sell securities, specifically common stock of United Australian Oil, Inc., for which no registration statement has ever been filed with the Securities and Exchange Commission, and the sale of such securities is not exempt from the provisions of the Securities Act of 1933 either by its terms or pursuant to any rules or regulations of the Securities and Exchange Commission promulgated thereunder.

"In engaging in the acts and practices described hereinabove, the defendant, directly and indirectly, made use of the means and instrumentalities of interstate commerce and of the mails, all in wilful contempt of said order of this Court in violation of Section 401, Title 18, United States Code."

As already indicated, the decisive issue on appeal is whether the proof established beyond a reasonable doubt that Mrs. Jackson knew of the existence

of the injunction and knew that it applied to her. The injunction was issued upon the consent of one Todd and his attorney. The injunction was never introduced in evidence at the hearing below but the parties agreed that it was correctly described in the information.

Mrs. Jackson was not individually named as a party, was never served with a copy of the injunction, and it was never mentioned in the newspapers.

The first witness for the government was the attorney for United Australian Oil. He testified that on May 6 he mailed a copy of the injunction to H. B. Todd, United Australian Oil, Inc., 1114 Mercantile Securities Building, Dallas. He talked with Mrs. Jackson on numerous occasions in late May, in August, and for two or three months thereafter. The conversations, at least in May, were concerned with the lawyer's efforts to locate Todd. The essence of the testimony was as follows:

"A. The substance of all conversations, Mr. Timmins, were generally the same. It varied as to individuals and it was in connection with two things. It was the transfer of stock by generally people who had restricted stock, or attempts to locate Mr. Todd. In some instances, there was a conversation about a third party attorney who was seeking transfer. This was generally the nature of our conversations.

"A. My recollection is that at the time we were attempting to locate Mr. Todd and I advised Mrs. Jackson that I needed him in connection with the injunction to the extent that under the Order we were obligated to return proceeds, and I needed to find out from him what was being done in that respect.

"I am not certain to what extent I would have said to Mrs. Jackson because to me Mrs. Jackson I considered quite insignificant at the time. She was not an officer of the company. I did not discuss the contents of the injunction, but I am certain that I told her I needed Mr. Todd in connection with the injunction from this Court.

"Q. Did you ever represent Mrs. Neva Jackson?

"A. No, sir.

"Q. Did you ever give her any advice in regard to any matter in that connection?

"A. Not individually.

"Q. I am saying professional advice.

"A. No, sir.

"Q. Did you ever show her a copy of the injunction issued out of this Court?

"A. No, I did not.

"Q. Did you ever explain the terms?

"A. No, I did not."

This proved that Mrs. Jackson was told of an injunction which required the return of proceeds from prior sales. No one claims, however, that this was a function within the scope of her employment, authority, or activity. It also proved that company counsel did not advise her of the remaining provisions of the injunction nor did he tell her that she was subject to its terms.

The attorney for the United States Securities and Exchange Commission, Fort Worth Regional office, went to the Australian Oil office the second and last weeks in August. He talked with Mrs. Jackson about purported Security Exchange Commission violations. He asked to see company records. She said that he would have to see the company attorney [the first witness above mentioned]. On October 22 this Securities Exchange Commission attorney served an administrative subpoena on Mrs. Jackson for the production of company books and records.

Oddly enough, he never at any time mentioned the injunction in any respect, nor did any of the associates who accompanied him.

The government also presented the testimony of five female employees, typ-

ists, bookkeepers, receptionists, who worked at the office during the period in question. They told of Mrs. Jackson's activities in the transfer of stock, and in other respects, but each of them emphatically stated that she did not know of the injunction. One of them stated that Mrs. Jackson was opening the *office mail* on the date when the attorney mailed a copy of the injunction to H. B. Todd, but did not know whether she opened the Todd letter.

In argument to the court below government counsel said (Tr. 380):

"I think it is true that she must have had knowledge of the order of May 3, 1968, in order to have violated that order. The Government's evidence with respect to her knowledge has been circumstantial here. There has been no direct evidence as such that she saw and examined the injunction."

He contended, however, and the trial court agreed, that guilty knowledge could be inferred beyond a reasonable doubt from the following circumstances.

First, one of the typists testified that Mrs. Jackson regularly opened the office mail for a time before and after May 6. Therefore, she must have opened the attorney's letter addressed to Todd and thereby became acquainted not only with the injunction but with its terms, to the extent that she, although a laywoman with no legal training, knew that it applied to her.

Second, on other occasions, detailed in the testimony, Mrs. Jackson told some of the typists that the company was in trouble with the Securities Exchange Commission, and warned them to beware of strangers snooping around the offices who might be working for the Securities Exchange Commission. At one time she vaguely referred to a court order, but the record is unclear whether she might have been speaking of an order to produce records. Moreover, she backdated some of the transfer certificates to a time prior to May 3, although it is not shown that this might not have been done to conform to the dates when the transfers should have been effectuated. Mrs. Jackson also spoke a time or two of the burning of some company records (by another officer of the company) as bonfires.

Significantly enough, this, so the typists testified, gave them no idea that there was an injunction, although it applied to them as servants of the company.

There seems to be no doubt that Mrs. Jackson violated Securities Exchange Commission laws and that she strongly suspected that her actions were violations. All this, says the government, raises an inference that Todd must have told Mrs. Jackson of the injunction else she should not have been so chary of visitors from Securities Exchange Commission. Todd was himself convicted of violating the injunction. He was not tendered as a witness in the hearing against Mrs. Jackson. It is also apparent that it would have been to his advantage to keep Mrs. Jackson in ignorance of the injunction, unless it is to be assumed that she was the kind of person who would knowingly continue signing her own name to stock transfers, realizing when she did so that each and every signature would subject her to the pains and penalties of criminal contempt.

What the evidence boils down to is that no copy of the injunction was ever served on Mrs. Jackson, the company attorney spoke with her many times but did not inform her of its contents or of her liabilities, the Securities Exchange Commission attorney spoke with her on at least three occasions and did not mention the injunction, and there was no mention of the injunction in the newspapers.

So far as the evidence reflects, the only opportunity Mrs. Jackson had to learn of the injunction, or its contents, or its applicability to her, would have been if and when she opened the letter addressed to Todd, read the injunction, and understood that it applied to her. There was proof that she could have opened the letter. There is no proof

that she actually did so. The lady who started opening the office mail after about the middle of May said she always put the letters addressed to Todd on his desk, unopened. Nobody testified that Todd told her of the injunction.

We cannot agree that proof of a violation of an injunction may support an inference of prior knowledge of the existence and contents of that injunction.

The evidence must be reviewed in the light most favorable to the prosecution, since. it prevailed below, Glasser v. United States, 1942, 315 U.S. 60, 62 S.Ct. 457, 86 L.Ed. 680.

This case appears to be similar to Causey v. United States, 5 Cir., 1965, 352 F.2d 203.

Burl Causey was in and out of a house belonging to his brother while a woman was forging Post Office money orders. The forger testified, however, that although he was in the house and associating with the violators, Burl Causey, so far as she knew, had no knowledge of what was being done. We held that "A suspicion, however strong, is not proof and will not serve in lieu of proof". We further held that evidence of guilty knowledge must be clear and not equivocal, that guilt is not to be made out by piling inference upon inference, and guilt may not be proven by association alone. We were dealing with a charge of criminal conspiracy in that case, but we said:

> "It is true that the proof may be circumstantial or direct or both, but it must convince beyond a reasonable doubt that a conspiracy existed, that the defendant knew it, and with that knowledge intentionally did some act or thing to further or carry on that conspiracy."

We concluded by saying that the prosecution had proved that Causey had an opportunity to have participated in the crime but did not prove that he actually did so. Causey's conviction was reversed and the indictment was ordered dismissed.

Proof of a criminal charge beyond a reasonable doubt is constitutionally required, In Re Winship, 397 U.S. 358, 90 S.Ct. 1068, 25 L.Ed.2d 368. No person should be subjected to punishment unless the evidence is sufficient to show beyond a reasonable doubt the existence of every fact necessary to constitute the crime charged, Davis v. United States, 1895, 160 U.S. 469, 488, 16 S.Ct. 353, 40 L.Ed. 499, expressly reaffirmed in *Winship,* supra.

If the evidence leaves it wholly uncertain whether the crime charged has been committed or not, the defendant must be acquitted, McWhorter v. United States, 5 Cir., 1952, 193 F.2d 982, 985.

The record is silent as to why the authorities in Dallas allowed the Australian office to continue operations for months without serving a copy of the injunction upon the employees or otherwise warning them of it in some unmistakable manner. Had there been such service or warning there would have been nothing of substance to this appeal.

As it stands, we are convinced as a matter of law that the prosecution failed to meet its burden of proof beyond a reasonable doubt, that is, that Mrs. Jackson knew of the injunction and its terms and, possessed of that knowledge, wilfully violated it.

We are not passing upon a charge that this appellant violated Security Exchange Commission laws. She has been convicted of knowingly violating a court injunction. This is the subject under review.

The judgment of the District Court is reversed, with directions to dismiss the information.

Reversed, with directions.