**UNITED STATES of America,**
**Appellee,**

v.

**Mark WEFERS, Defendant, Appellant.**

**No. 7688.**

United States Court of Appeals,
First Circuit.

Heard Nov. 2, 1970.

Decided Dec. 10, 1970.

William P. Shea, Dover, N. H., by appointment of the Court, for appellant.

William B. Cullimore, Asst. U. S. Atty., with whom David A. Brock, U. S. Atty., was on brief, for appellee.

Before ALDRICH, Chief Judge, Mc-ENTEE and COFFIN, Circuit Judges.

ALDRICH, Chief Judge.

This is an appeal from a conviction for criminal contempt for wilful violation of a court order. The facts are these. The defendant, Wefers, during the spring term, 1970, was president of the Student Government at the University of New Hampshire. In April he contracted to pay three individuals, hereinafter the Three, or the Chicago Three, to speak on campus. The Three were among the defendants known as the Chicago Seven at a recent nationally publicized criminal trial. They professed views highly distasteful to many citizens of New Hampshire. The date for their appearance was postponed several times because of other engagements, but was eventually set for Tuesday, May 5, at 7:00 P.M. On May 1 the Trustees voted to make the University Field House available only until 5:00 P. M. It was their view that the earlier hour would reduce a danger of violence, which to some of them appeared to be substantial. Wefers' response, expressed in a resolution proposed to the University Senate, was that free speech knew no time limitations.[1] On Saturday, May 2, he consulted counsel, who in-

---

[1] Wefers' absolute views on free speech, as expressed at the trial, "I believe that anyone and everyone has the right to say anything, anywhere, any time," find support in neither history, reason nor law. While his position may have exacerbated feelings, it was only peripherally relevant to the issue presented here.

formed him that they would aid him in an attempt to obtain an injunction against the Trustees, and on Monday afternoon he filed a complaint in the district court for that purpose.

The complaint was brief, and sought two orders from the court. First, to enjoin the Board of Trustees from enforcing its directive that the Chicago Three could speak "only between the hours of 2 P.M. and 5 P.M. on May 5, 1970." Second, to grant plaintiff "the right to schedule the appearance of [the Three] * * * on Tuesday, May 5, 1970, from 5:00 P.M. until they finish speaking." As a result of cooperation between the court and all parties, a hearing was had on this complaint on Tuesday morning. At noontime the court entered the following order.

"The Board of Trustees of the University of New Hampshire are enjoined and restrained from enforcing their directive that Abbie Hoffman, David Dellinger and Jerry Rubin can speak at the University of New Hampshire only between the hours of 2:00 P.M. and 5:00 P.M. on Tuesday, May 5, 1970.

"It is further ordered that Abbie Hoffman, David Dellinger and Jerry Rubin shall be allowed to speak at the University of New Hampshire on Tuesday, May 5, 1970, between the hours of 3:30 P. M. and 6:30 P.M., Tuesday, May 5, 1970. So ordered."

The Chicago Three arrived in the area at about 3:30, but took the position that the Trustees were attempting to "dupe" them, and made no effort to speak until 7:30 that evening. Although the defendant indicated to a crowd that had gathered in the afternoon that he would have preferred the speech at that time, this preference was apparently based only on the convenience of the crowd. He in no way recognized any duty, resulting from the court order, to have the speaking terminate by 6:30. On the contrary, he openly asserted that the order imposed no such obligation, and made no effort to reach the Three to urge an afternoon speech. The court had, however, intend-

ed the second paragraph of its order as a limitation on the time of the speech. In the present proceedings it found that Wefers, in not attempting to conform the speaking with the court's view of the order, had wilfully violated the order and was guilty of contempt.

■ Although the government also sought to show the defendant in contempt of a supplemental order, the court declined to so hold. However, for a fuller understanding of the case we recite the facts in this connection. When counsel for the Trustees learned that both the defendant and his attorney construed the original order as imposing no obligation on the defendant to terminate the speaking by 6:30, counsel went to the court and explained the difference of opinion. As a result, the court entered the following supplemental order.

"It has come to the Court's attention that its prior order issued this day may have been misconstrued or misinterpreted.

"The Court wishes to make it clear that its order means that Abbie Hoffman, David Dellinger, and Jerry Rubin shall not be allowed t ospeak at the University of New Hampshire on Tuesday, May 5, 1970, after 6:30 P.M., unless the Trustees otherwise allow."

An attempt was made to serve this order upon the defendant at 6:55, but, believing that he was about to be arrested, he evaded the marshal without receiving the paper or learning its contents. At the trial the court held that he could not be charged with violation of this order, in part because it "was issued too late to have any real effect." However, not having seen it, defendant cannot take comfort from its contents so far as his subjective state of mind is concerned. Nor do we accept the contention presently made that the Trustees in fact "allowed" the speaking to proceed after 6:30, so that the supplemental order was complied with, and there could thus be no violation of the original order which it replaced. The President announced that in the interest of maintaining peace on

the campus he was not calling in the governmental authorities, but would let the University take legal action in view of the deliberate violation of the court's order. To argue that the speech was therefore "allowed" is an imposition of the court's intelligence.

■ The defendant next contends that, because of the recalcitrant attitude of the Chicago Three, he could not have prevented an evening speech and compliance with the court's order would have been impossible. We do not accept this, either. The obligation to comply with an order of the court is not so lightly avoided. The defendant had engaged the Three; he held the purse strings. While it may be that they would have taken matters in their own hands regardless of his instructions, the burden of proving impossibility (or that defendant would have believed it impossible, if that would be sufficient), is not met by speculation. *Cf.* Barber v. Page, 1968, 390 U.S. 719, 724–725, 88 S.Ct. 1318, 20 L.Ed.2d 255.

■ This brings us to the nub of the case, Wefers' intent. So far as manifestations of his subjective intent are concerned the evidence is uniformly that he and his counsel [2] believed, from the moment that the order was read in court, that it was directed only against the Trustees. In the absence of direct evidence that Wefers intentionally violated the order, a conviction can be supported only if such intention can be inferred from a showing that the plain language of the court made the obligation unmistakable.[3] Even as to criminal contempt the court can infer, in spite of his contrary assertion, that the defendant correctly understood an unambiguous order. We cannot, however, find such lucidity here.

It is to be borne in mind that the original proceeding was instituted not against the defendant, to obtain an order restricting him, but was brought by the defendant to obtain an order against the Trustees. No cross-claim was filed alerting him to a danger of relief running the other way.[4] While technicalities · of pleading are not determinative, we think, particularly in the light of the speed with which these proceedings were necessarily conducted, that an intent by the court to reverse the field, so as to bind Wefers

2. The government cites cases for the proposition that reliance on advice of counsel is no defense to a criminal contempt charge. *See, e. g.,* In re Door, 1952, 90 U.S.App.D.C. 190, 195 F.2d 766, 770 (advice of counsel no bar to finding of contempt where defendant consciously circumvented court's order); United States v. Goldfarb, 2 Cir., 1948, 167 F.2d 735 (dictum). *But see* In re Eskay, 3 Cir., 1941, 122 F.2d 819, 822 n. 17 (dictum, citing cases) (acting in good faith on advice of counsel is a defense to criminal, though not civil, contempt). We decide this case without reference to counsel, and simply note here that counsel in no way gave advice that would advance the government's case as to Wefers' knowledge of the order's intended meaning.

3. For this reason it has been said that the order must be unambiguous before contempt can be found in its violation. *See* International Longshoremen's Ass'n, Local 1291 v. Philadelphia Marine Trade Ass'n, 1967, 389 U.S. 64, 76, 88 S.Ct. 201, 19 L.Ed.2d 236 (civil contempt); In re Rubin, 3 Cir., 1967, 378 F.2d 104, 108; *cf.* Terminal R.R. Ass'n of St.

Louis v. United States, 1924, 266 U.S. 17, 29, 45 S.Ct. 5, 69 L.Ed. 150 (civil contempt). As *Rubin* points out, this requirement is simply a corollary of the necessity that defendant have had knowledge of the order before it can be claimed, as here, that he "wilfully disobeyed and resisted" it. Yates v. United States, 10 Cir., 1963, 316 F.2d 718, 723; United States v. Hall, 2 Cir., 1952, 198 F.2d 726, 729, cert. denied 345 U.S. 905, 73 S.Ct. 641, 97 L.Ed. 1341; *cf.* United States v. United Mine Workers, 1947, 330 U.S. 258, 303, 67 S.Ct. 677, 91 L.Ed. 884. Possibly, if it can be shown that, although the order was ambiguous, the defendant correctly understood it and wilfully violated it nevertheless, a conviction could be supported. We do not have that case here.

4. In this connection the government's citation of Terminal R.R. Ass'n of St. Louis v. United States, note 3 ante, 266 U.S. at 29, 45 S.Ct. at 8 (order must be "read in the light of the issues and the purpose for which the suit was brought") seems scarcely helpful to its position.

by the order with which he sought to restrain the Trustees, called for great specificity. *See* Berry v. Midtown Service Corp., 2 Cir., 1939, 104 F.2d 107, 111, cert. granted 308 U.S. 536, 60 S.Ct. 114, 84 L.Ed. 452, *dismissed per stipulation*, 308 U.S. 629, 60 S.Ct. 297, 84 L.Ed. 525. We do not accept the government's argument that the second paragraph of the original order had such specificity because unless read as a directive limiting defendant's conduct it was meaningless. Rather, it was possible for the defendant to read that paragraph in the light of his second prayer, in which he had asked that the Trustees be enjoined from preventing the Chicago Three from speaking after 5:00 P.M. The order did not give relief in such broad terms, but in stating that the Three "shall be allowed to speak * * * between the hours of 3:30 P.M. and 6:30 P.M.," it could be read as partially responsive thereto. Concededly it meant that the court was not affirmatively ordering the Trustees to allow the speaking to continue after 6:30. To this extent the defendant would remain in difficulty with the Trustees if the speaking continued later. But this was the type of trouble he had been in before any suit was brought. Defendant might think merely that he had obtained less than complete relief, not that he had been, himself, placed under an affirmative obligation to the court. A few more words would have made this obligation plain. Some weight is to be attached to their absence.

We can understand that the court felt that, in allowing something, it was implicit that anything beyond what was allowed was forbidden, but looking at the totality of the circumstances we cannot find, on the face of the order, that such implication was clear and unambiguous.

The court's intent is reasonably clear to us,[5] but it is to be remembered that this is criminal contempt. The conviction must be vacated, and the defendant discharged.

---

5. It might seem even clearer in the light of the court's two-page memorandum opinion bearing the same date as the order. The record, however, contains no suggestion that defendant received it. Contemplating the possibility of affording the government a new trial, should such further evidence be available, *cf.* Greenberg v. United States, 1 Cir., 1960, 280 F.2d 472, we have considered the content of this memorandum. We conclude, although with some reluctance, that even it fails to bring home sufficiently clearly to the defendant, under the circumstances of this case, that the order carried burdens as well as benefits.