600 F.2d 414
 1979-1 Trade Cases 62,709
 UNITED STATES of America, Appellee,
v.
UNITED STATES GYPSUM COMPANY, National Gypsum Company,
Georgia Pacific Corporation, Kaiser Gypsum Company, Inc.,
the Celotex Corporation, the Flintkote Company, Graham J.
Morgan, Andrew J. Watt, Colon Brown, J. P. Nicely, William
H. Hunt, Claude E. Harper, Robert A. Costa, William D.
Herbert, George J. Pecaro, James D. Moran
United States Gypsum Company, (D.C. Criminal No.
73-00347-01) Appellant in No. 78-2263
National Gypsum Company, (D.C. Criminal No. 73-00347-02)
Appellant in No. 78-2264
Georgia-Pacific Corporation, (D.C. Criminal No. 73-00347-03)
Appellant in No. 78-2265
The Celotex Corporation, (D.C. Criminal No. 73-00347-05)
Appellant in No. 78-2266.
 Nos. 78-2263 to 78-2266.
 United States Court of Appeals,
Third Circuit.
 Argued March 15, 1979.
Decided May 29, 1979.
As Amended June 14, 1979.
 
 Rodney O. Thorson (argued), L. John Schmoll, Peter A. Mullin, Washington, D.C., for appellee.
 H. Francis De Lone (argued), Stephen A. Stack, Jr., Mari M. Gursky, Dechert, Price & Rhoads, Philadelphia, Pa., Cloyd R. Mellott (argued), William B. Mallin, J. Gary Kosinski, D. Richard Funk, Eckert, Seamans, Cherin & Mellot, Pittsburgh, Pa., Robert C. Keck, James G. Hiering, Michael R. Flaherty, Weston W. Hanscom, Keck, Mahin & Cate, Chicago, Ill., W. Donald McSweeney, William A. Montgomery, Richard J. Hoskins, Schiff, Hardin & Waite, Chicago, Ill., for appellants.
 Before ADAMS, HUNTER and WEIS, Circuit Judges.
 OPINION OF THE COURT
 JAMES HUNTER, III, Circuit Judge:
 
 
 1
 The appellants, United States Gypsum Co. (USG), National Gypsum Co. (National), Georgia-Pacific Corp. (G-P), and The Celotex Corp. (Celotex), appeal from the denial of their consolidated motion for judgments of acquittal on the ground of insufficiency of the evidence to support the convictions. They contend that the district court should have granted their motion and, on the authority of Burks v. United States, 437 U.S. 1, 98 S.Ct. 2141, 57 L.Ed.2d 1 (1978), should have held that retrial was barred by the double jeopardy clause. Finding sufficient evidence, we affirm.
 
 
 2
 On December 27, 1973 appellants were indicted, along with two other companies and ten individuals not before us, for violating section 1 of the Sherman Act, 15 U.S.C. § 1 (1976). They are alleged to have engaged in a nationwide conspiracy to fix the prices, the terms and conditions of sale, and the methods of handling gypsum board products. The Government charged that the conspiracy began some time prior to 1960 and continued until the indictment was returned. The indictment listed thirteen means by which the conspiracy was allegedly effected, the most pervasive of which was price verification. Appellants were convicted after a nineteen week trial, and appealed to this court. We reversed the appellants' convictions, though without ruling on the sufficiency of the evidence. 550 F.2d 115 (3d Cir. 1977). The Government appealed to the United States Supreme Court, which affirmed this court's judgment. 438 U.S. 422, 98 S.Ct. 2864, 57 L.Ed.2d 854 (1978). The case was remanded to the district court for a new trial.
 
 
 3
 On remand appellants moved for judgments of acquittal, contending that the evidence introduced at the first trial was insufficient to support the convictions. Their motion was denied on September 7, 1978. Because appellants' original conviction on the charges involved here was reversed on appeal, if the defendants are correct that the evidence tendered at the first trial was insufficient to support a conviction, retrial would subject them to double jeopardy. Burks v. United States, 437 U.S. 1, 98 S.Ct. 2141, 57 L.Ed.2d 1 (1978). Consequently, they may appeal the denial of their motion at this juncture, under the "collateral order" exception to the final judgment rule. See Abney v. United States, 431 U.S. 651, 97 S.Ct. 2034, 52 L.Ed.2d 651 (1977).
 
 
 4
 In reviewing the denial of a motion for judgment of acquittal on the ground of insufficiency of the evidence to support a conviction, we must sustain the verdict if there is substantial evidence, viewed in the light most favorable to the Government, to uphold the jury's decision.[1] Burks v. United States, 437 U.S. 1, 17, 98 S.Ct. 2141, 57 L.Ed.2d 1 (1978); Glasser v. United States, 315 U.S. 60, 80, 62 S.Ct. 457, 86 L.Ed. 680 (1942). Moreover, we are aware that "the character and effect of a conspiracy (is) not to be judged by dismembering it and viewing its separate parts, but only by looking at it as a whole." United States v. Patten, 226 U.S. 525, 544, 33 S.Ct. 141, 145, 57 L.Ed. 333 (1913).
 
 I.
 
 5
 The appellants primarily contend that there was presented insufficient evidence of conspiracy in the statutory period to support the conviction, particularly given what they describe as intense price competition beginning immediately prior to the statutory period.[2] We focus our attention on that argument.
 
 
 6
 The gist of the crime of conspiracy to violate the Sherman Act is the agreement itself. United States v. Socony-Vacuum Oil Co., 310 U.S. 150, 252, 60 S.Ct. 811, 84 L.Ed. 1129 (1940). No overt acts need be alleged or proved: "(I)t does not make the doing of any act other than the act of conspiring a condition of liability." Nash v. United States, 229 U.S. 373, 378, 33 S.Ct. 780, 57 L.Ed. 1232 (1913). To determine whether the conspiracy is a continuing one, we must look to the scope of the agreement allegedly entered into by the parties. Fiswick v. United States, 329 U.S. 211, 216, 67 S.Ct. 224, 91 L.Ed. 196 (1946). See Grunewald v. United States,353 U.S. 391, 397, 77 S.Ct. 963, 1 L.Ed.2d 931 (1957). The Supreme Court in United States v. Kissel, 218 U.S. 601, 607, 31 S.Ct. 124, 54 L.Ed. 1168 (1910), defined a continuous conspiracy as one that "contemplates bringing to pass a continuous result that will not continue without the continuous cooperation of the conspirators to keep it up." The conspiracy charged here, to maintain high and stable prices, certainly fits that test.
 
 
 7
 The appellants would have us hold that the Government is limited in the proof of its case solely to those events which occurred during the statutory period. In the context of a continuing conspiracy, we do not believe that the Government is so limited. When the conspiracy is alleged to have been formed prior to the statutory period, the issue becomes one of continuation. We agree with the Second Circuit that "the Government must present evidence justifying the jury in finding beyond a reasonable doubt that the particular agreement into which a defendant entered continued into the period not barred by limitation." United States v. Borelli, 336 F.2d 376, 385 (2d Cir. 1964), Cert. denied, 379 U.S. 960, 85 S.Ct. 647, 13 L.Ed.2d 555 (1965). There is no requirement that the Government prove a new agreement in the statutory period. United States v. Kissel, 218 U.S. 601, 31 S.Ct. 124, 54 L.Ed. 1168 (1910). Moreover, the "overt act of one partner may be the act of all without any new agreement specifically directed to that act." Id. at 608, 31 S.Ct. at 126. See United States v. Nowak, 448 F.2d 134, 139 (7th Cir. 1971). This court discussed the utility of pre-statutory period evidence to prove a conspiracy in United States v. Johnson, 165 F.2d 42 (3d Cir. 1947), Cert. denied, 332 U.S. 852, 68 S.Ct. 355, 92 L.Ed.2d 421 (1948). There, the defendants were charged under 18 U.S.C. § 371 (1976) with conspiracy to obstruct the administration of justice. In finding sufficient evidence to support the conviction we held: "Some of the acts necessarily occurred (prior to the statutory period), but these acts could be proved to show the existence and continuance of the conspiracy even though there could have been no prosecution for any substantive offense charged as an overt act." Id. at 45.
 
 
 8
 Here, we find sufficient acts in furtherance of the conspiracy committed in the statutory period to justify a jury in concluding that the agreement continued therein. The Government's proof of conspiracy rested heavily on the practice of price verification. The defendants' own recitation of the facts reveals various incidents of price verification in the statutory period. See Appellants Brief at 34-41. The testimony discloses that Kenneth H. Atwell and Charles D. Webster, Vice President and Administrative Assistant respectively of National Sales Administration, engaged in numerous verification contacts after December 27, 1968. These apparently involved both price and credit term verifications. Also, the management of G-P did not instruct its branch managers to discontinue verification until February, 1969. Certainly, the jury could infer that the conspiracy continued until that time. Moreover, O. E. Burch, General Sales Manager of G-P, had numerous contacts with competitors between June 1969 and 1972. The testimony also discloses that Celotex continued verifying until 1973.[3]
 
 
 9
 Finally, the appellants attempt to show abandonment of the conspiracy by demonstrating that the gypsum board industry was experiencing intensive price competition beginning in 1967. They argue that the resumed price competition proves as a matter of law that they had abandoned any anticompetitive conspiracy at least two years prior to the statutory period. The Supreme Court in United States v. Container Corp., 393 U.S. 333, 89 S.Ct. 510, 21 L.Ed.2d 526 (1969), pointed out, however, that "(t)he continuation of some price competition is not fatal to the Government's case. The limitation or reduction of price competition brings the case within the ban . . . ." Id. at 337, 89 S.Ct. at 512, Citing United States v. Socony-Vacuum Oil Co., 310 U.S. 150, 224 & n. 59, 60 S.Ct. 811, 84 L.Ed. 1129 (1940). Moreover, the Government contends that the stepped-up price competition did not commence until at least 1970. While not presenting expert testimony of its own, the Government pointed to shortcomings in the testimony of the defendants' expert which would justify the jury in rejecting it.
 
 
 10
 Therefore, we find sufficient evidence from which the jury could have concluded that the conspiracy continued into the statutory period.
 
 II.
 
 11
 The appellants argue that unless there is sufficient evidence within the statutory period on each of the three separately stated objectives and each of the thirteen specific means charged in the indictment, they are entitled to a judgment of acquittal. The indictment charges the defendants with conspiracy to a) raise, fix, maintain and stabilize the prices of gypsum board; b) fix, maintain, and stabilize the terms and conditions of sale thereof; and c) adopt and maintain uniform methods of packaging and handling such gypsum board.
 
 
 12
 First, the failure of the government to prove that the defendants engaged in each of the thirteen specific means is not fatal. In United States v. Adamo, 534 F.2d 31, 38 (3d Cir.), Cert. denied, 429 U.S. 841, 97 S.Ct. 116, 50 L.Ed.2d 110 (1976), we held that "the Government is under no obligation to prove every overt act alleged." See Nash v. United States, 229 U.S. 373, 380, 33 S.Ct. 780, 57 L.Ed. 1232 (1913) (in criminal antitrust actions, "not all the means alleged need be proved"). Nor is the Government limited in its proof to these over acts alleged in the indictment. United States v. Adamo, 534 F.2d at 38.
 
 
 13
 Second, the three allegedly distinct objectives of the conspiracy are not separate. Rather, it is and has been the Government's theory that the second and third objectives to fix, maintain, and stabilize the terms and conditions of sale and to adopt and maintain uniform methods of packaging and handling of gypsum products are integral parts of the first. Moreover, the district court charged the jury without objection by the defendants that any agreement to fix the methods of handling gypsum board would not be illegal unless it had the purpose or effect of stabilizing prices. App. at 3885a-86a. Further, the court charged that the terms and conditions of sale are really components of price. App. at 3900a. The consistent theory of the Government's case is that the defendants had engaged in a conspiracy "with a single common design and objective that of maintaining high and stable prices." Brief for Government at 10. See Addendum to Brief for Government at 15. Given, then, that a single unitary conspiracy was alleged, the holdings of this court in United States v. Tarnopol, 561 F.2d 466 (3d Cir. 1977), and United States v. Dansker, 537 F.2d 40 (3d Cir. 1976), Cert. denied, 429 U.S. 1038, 97 S.Ct. 732, 50 L.Ed.2d 748 (1977), are not applicable.
 
 III.
 
 14
 The focus of this opinion has been on whether the jury could find that the conspiracy continued into the statutory period. We have, as well, reviewed the record and find sufficient evidence on each element of the offense to support the jury's guilty verdict.[4] Therefore, the order of the district court denying the defendants' motion for judgment of acquittal on the ground of insufficiency of the evidence to support the conviction will be affirmed and the case remanded for a new trial.
 
 
 
 [1]
 Both sides agree that we must test the sufficiency of the evidence using the standards established by the Supreme Court in this case. The Supreme Court held that the jury had been misinstructed in two major areas. First, on the element of intent the Court held that the instruction which allowed the jury in a criminal action under the Sherman Act to presume intent to fix prices from a stabilizing effect was improper. If the Government proves anticompetitive effects, then it must show at the least that the defendant's actions were taken with knowledge that anticompetitive effects would occur. However, in the absence of proof of actual anticompetitive effects, the Government must prove that the defendant's conduct was undertaken with the purpose of producing anticompetitive effects. 438 U.S. at 443 and n. 21, 98 S.Ct. 2864. Cf. United States v. Gillen, 599 F.2d 541 (3d Cir., 1978) (Adams, J., concurring)
 Second the Court held that the instruction on withdrawal from the conspiracy was erroneous. The district court had charged the jury that to establish withdrawal, the defendant must either affirmatively notify every other member of the conspiracy or make a disclosure of the illegal scheme to law enforcement officials. The appellants argued that the resumption of intense competitive behavior may be sufficient to establish withdrawal from the conspiracy, but that the district court's instruction precluded that defense. The Court agreed, holding that the taking of affirmative acts inconsistent with the object of the conspiracy and communicated in a manner reasonably calculated to reach the co-conspirators is sufficient to show withdrawal. At 460-467, 98 S.Ct. 2864. In reviewing the sufficiency of the evidence, we will apply the standards as enunciated by the Supreme Court.
 
 
 [2]
 The statute of limitations in a criminal antitrust action is five years. 18 U.S.C. § 3282 (1976). Since the indictment was returned on December 27, 1973, the statutory period began on December 27, 1968
 
 
 [3]
 Because we have used the appellants' version of the facts, our discussion of the incidents of verification in the statutory period has omitted any mention of USG. To support its contention that it had ceased verification in 1968, USG relies on testimony of Andrew J. Watt, Executive Vice-President of USG and Joseph L. Baldwin, Jr., Director of Marketing Policy of USG. The Government, on the other hand, points to evidence which could lead a jury to disbelieve the Watts-Baldwin testimony. It also cites us to testimony by Rhyne Simpson, Jr., President of Republic Gypsum, which indicated that verification by USG continued into the statutory period
 
 
 [4]
 One note about the element of intent is necessary. The Supreme Court held that the instruction requiring the jury to presume intent from effect on prices was erroneous. 98 S.Ct. 2864 at 2878. See note 1 Supra. On this appeal, the Government appears virtually to have abandoned any contention of anticompetitive effects other than making the conclusory statement that "(t) hese price exchanges had the tendency to moderate the number and degree of competitive deviations and arrest the downward trend of price level." Brief for Appellee at 16. See 438 U.S. at 457, 98 S.Ct. at 2883 ("Regardless of its putative purpose, the most likely consequence of any such agreement to exchange price information would be the stabilization of industry prices."). See also United States v. Container Corp., 393 U.S. 333, 89 S.Ct. 510, 21 L.Ed.2d 526 (1969) (anticompetitive effect of exchange of price information inferred from market structure). The Government presented no expert testimony at trial to establish anticompetitive effects
 Instead, the Government has relied in this appeal on evidence of anticompetitive purpose under the Supreme Court's elevated standard. 438 U.S. at 443 n. 21, 98 S.Ct. 2864. The Government points to testimony by several company executives to the effect that verification was engaged in with the purpose of insuring market stability and avoiding destruction of the market. See, i.e., Testimony of A. L. Meyer, Director of Marketing Services of G-P, App. at 1456a; Testimony of Kenneth H. Atwell, Vice-President of Sales Administration at National, App. at 1695a-97a; Testimony of Henry C. Bear and R. C. Gimlin, Vice-Presidents of Merchandising at USG, App. at 548a-49a and 1121a; and Testimony of Homer D. Jarrett, General Credit Manager of Celotex, App. at 2034a-35a. We believe that the record would support a jury finding of anticompetitive purpose.