**UNITED STATES of America**

v.

**Robert McQUILKIN, and Arlene Whalin, Appellants.**

Nos. 81–1844, 81–1846, 81–2175 and 81–2176.

United States Court of Appeals, Third Circuit.

Argued Nov. 30, 1981.

Decided March 1, 1982.

Edward H. Weis, First Asst. Federal Defender, Defender Association of Phila., Federal Court Div., Philadelphia, Pa., for appellants.

Peter F. Vaira, U. S. Atty., Walter S. Batty, Jr., Asst. U. S. Atty., Chief, Appellate Section, Mary C. Spearing, Elizabeth K. Ainslie (argued), Asst. U. S. Attys., Philadelphia, Pa., for appellee.

Before ALDISERT, ROSENN and WEIS, Circuit Judges.

## OPINION OF THE COURT

ROSENN, Circuit Judge.

The principal question before this court is whether it has jurisdiction to hear an intermediate appeal after conviction and grant of a new trial on the contention that the evidence in the first trial was legally insufficient to convict and a second trial is therefore precluded by the Double Jeopardy Clause. Appellants, having been convicted of criminal contempt without a jury trial before a magistrate, succeeded in having their convictions vacated by the United States District Court for the Eastern District of Pennsylvania and the case remanded for a trial on the ground that they were denied a statutory right to a jury trial.

Appellants appeal from the order remanding for a new trial contending that they cannot be retried without being subjected to double jeopardy because the evidence presented at the first trial was insufficient to sustain their convictions. The Government argues that appellants cannot raise the question of the sufficiency of the evidence until the completion of the new trial which has been ordered. Until that time, the Government contends, this court lacks jurisdiction because there is no final order appealable under 28 U.S.C. § 1291.

### I.

In 1971, a class of plaintiffs which included low income, minority persons who had been unable to secure adequate housing outside of areas of minority concentration, brought suit against those responsible for construction of the project, which had been planned since 1956. After trial the district court ordered the governmental defendants to "take all necessary steps for the construction of the Whitman Park Townhouse Project as planned." *Resident Advisory Board v. Rizzo,* 425 F.Supp. 987, 1029 (E.D. Pa.1976), *modified,* 564 F.2d 126 (3d Cir. 1977), *cert. denied,* 435 U.S. 908, 98 S.Ct. 1457, 55 L.Ed.2d 499 (1978).

Because area residents opposed to the project continued to interfere with its construction, a temporary injunction was issued March 17, 1980, by the United States District Court for the Eastern District of Pennsylvania followed by a permanent injunction on April 1, 1980. The injunction generally enjoins the Whitman Area Improvement Council and the Whitman Council, Inc., and "all other persons acting in concert with them or otherwise participating in their aid" from picketing or protesting except as set out in the order and also prohibits other acts of interference with construction of the project. It stated that it was to be enforced by the United States Marshal and Philadelphia police assigned by the city or mayor and deputized by the marshal. Appellants were among defendants charged with criminal contempt for alleged violations of the injunction.

On the morning of June 3, 1980, a crowd gathered at the construction site of the project. At about 10:30 A.M. an attorney for Whitman Council, Inc., spoke to the crowd, urging the people to go home. At approximately 11:00 A.M. the United States Marshal, having been contacted by the supervisor of the deputy marshals who were routinely assigned to the construction area, arrived at the site. At 11:35 A.M. or thereabout, the marshal introduced himself to the crowd using a police bullhorn. The crowd became very noisy and continued to make noise while the marshal announced that they were violating the court order by blocking an access street and access gates to the construction site. The marshal waited about thirty seconds until the noise abated and then announced that those who did not leave within five minutes would be arrest-

ed. A portion of those gathered left after the marshal spoke. Between five and ten minutes later police arrived and began making arrests. The appellants were among those arrested.

After a non-jury trial a magistrate found appellants guilty of violating the court order and sentenced each to a period of probation.[1] On appeal to the district court, it reversed on the ground that appellants had been denied their statutory right to a jury trial and remanded the case to the magistrate. Appellants argued in a motion for clarification or reconsideration of the district court's order that they could not be retried because the evidence against them in the trial before the magistrate was insufficient to support conviction and that a retrial would violate the Double Jeopardy Clause. The district court accepted this argument as to one of the appellants, Bob Van Blunk, and on June 23, 1981, modified its order to direct acquittal of that appellant. The court found the evidence sufficient as to the other appellants and they have appealed to this court. We affirm.

## II.

As an initial matter, we must determine whether we have appellate jurisdiction of the appeal. The Government contends that this court has no jurisdiction to entertain the double jeopardy claim because there has been no final decision from which appellants can appeal.

Under 28 U.S.C. § 1291 the courts of appeals have "jurisdiction of appeals from all final decisions of the district courts of the United States." This statute embodies a firm congressional policy against interlocutory or piecemeal appeals. Adherence to this policy "has been particularly stringent in criminal prosecutions" because intermediate appeals bring delays and disruptions which seriously impede " 'the effective and fair administration of the criminal law.' " *Abney v. United States*, 431 U.S. 651, 656–57, 97 S.Ct. 2034, 2038–39, 52 L.Ed.2d 65 (1976) (quoting *DiBella v. United States*, 369 U.S. 121, 126, 82 S.Ct. 654, 657, 7 L.Ed.2d 614 (1962)).

In *Abney*, however, the Supreme Court recognized an exception to the general rule that an appeal does not lie until there is a final judgment of conviction. On the assumption that it had jurisdiction, this court in *Abney* had affirmed by judgment order the district court's denial of the defendants' motions to dismiss on grounds that retrial would expose them to double jeopardy and that the indictment failed to charge an offense. The Supreme Court held that dismissal of the double jeopardy claim was immediately appealable,[2] but that dismissal of the challenge to the sufficiency of the indictment was not.

The Court held that a pretrial order denying a motion to dismiss on double jeopardy grounds fit within the exception of *Cohen v. Beneficial Industrial Loan Corp.*, 337 U.S. 541, 69 S.Ct. 1221, 93 L.Ed. 1528 (1949), to the final judgment requirement and thus

1. The appellants' demands for jury trials were rejected by the magistrate. Before trial the Government successfully moved to have sentences limited to six months' imprisonment, $500 fines, or five years' probation.

2. The defendants had from the institution of the action challenged the indictment as charging duplicitous offenses—a conspiracy and an attempt to violate the Hobbs Act—in a single count. The district court rather than directing the prosecution to elect between theories required it to establish both offenses. On appeal this court ordered a new trial on the ground that certain evidence had been admitted without proper authentication and, in addition, directed the prosecution to elect between the conspiracy and attempt offenses on retrial.

On remand the prosecution proceeded with the conspiracy charge and defendants filed motions to dismiss which eventually became the basis of litigation before the Supreme Court. Defendants argued that the duplicitous indictment made it impossible to determine on which theory the jury had convicted them. If the jury had reached a verdict of guilty on the attempt charge but acquitted them of conspiracy, the argument went, then the new trial on conspiracy violated the Double Jeopardy Clause. After ruling that the denial of the motion to dismiss on double jeopardy grounds was, though not a final order, immediately appealable, the Court on the merits held that a new trial would not subject defendants to double jeopardy because they had been convicted of both offenses below.

was a "final decision" within the meaning of 28 U.S.C. § 1291. *Abney, supra,* 431 U.S. at 662, 97 S.Ct. at 2041. The Court applied a three-part test derived from *Cohen* to orders denying motions to dismiss on double jeopardy grounds. It found first that such orders "constitute a complete, formal, and, in the trial court, final rejection of a criminal defendant's double jeopardy claim," *id.* at 659, 97 S.Ct. at 2040, and thus met *Cohen's* requirement that the order fully dispose of the question at issue.

The Court next considered a second *Cohen* factor, that an order must not be "simply a 'step toward final disposition of the merits of the case [which would] be merged in final judgment.'" *Id.* at 658, 97 S.Ct. at 2039 (quoting *Cohen v. Beneficial Industrial Loan Corp.,* 337 U.S. at 546, 69 S.Ct. at 1225). The Court explained that

> the very nature of a double jeopardy claim is such that it is collateral to, and separable from, the principal issue at the accused's impending criminal trial, *i.e.,* whether or not the accused is guilty of the offense charged. In arguing that the Double Jeopardy Clause of the Fifth Amendment bars his prosecution, the defendant makes no challenge whatsoever to the merits of the charge against him. . . . Rather, he is contesting the very authority of the Government to hale him into court to face trial on the charges against him.

*Id.* at 659, 97 S.Ct. at 2040.

The third requirement for an order to fit the *Cohen* exception is that an important right would be lost if review had to be postponed until final judgment. The Court readily recognized the loss of such a right in an order denying a motion to dismiss on double jeopardy grounds. Emphasizing that the historic clause protects individuals from being twice put to trial as well as

from being twice punished,[3] the Court determined that "if a criminal defendant is to avoid *exposure* to double jeopardy and thereby enjoy the full protection of the Clause, his double jeopardy challenge to the indictment must be reviewable before that subsequent exposure occurs." *Id.* at 662, 97 S.Ct. at 2041.

In its analysis of the three *Cohen* factors in the context of a criminal prosecution and the Double Jeopardy Clause, the Court in *Abney* appears to have leaned heavily on the third factor—an important right would be irretrievably lost if intermediate review were denied. *See United States v. MacDonald,* 435 U.S. 850, 860 n.7, 98 S.Ct. 1547, 1552 n.7, 56 L.Ed.2d 18 (1978) ("certain claims (because of the substance of the rights entailed, rather than the advantage to a litigant in winning his claim sooner) should be resolved before trial. Double jeopardy claims are paradigmatic.") Thus, as we read *Abney,* the central reason for the Court's determination that double jeopardy claims fall within the *Cohen* exception is the nature of the right protected—"the rights conferred on a criminal accused by the Double Jeopardy Clause would be significantly undermined if appellate review of double jeopardy claims were postponed until after conviction and sentence." *Abney,* 431 U.S. at 660, 97 S.Ct. at 2040.

More recently the Supreme Court in *Burks v. United States,* 437 U.S. 1, 98 S.Ct. 2141, 57 L.Ed.2d 1 (1978), dealt with insufficiency of the evidence as the ground for a double jeopardy plea. The Court held that the Double Jeopardy Clause prohibits a second trial once a reviewing court has found the evidence legally insufficient.[4] *Accord Hudson v. Louisiana,* 450 U.S. 40, 101 S.Ct. 970, 67 L.Ed.2d 30 (1981). The Court distinguished reversal for trial error

---

**3.** The Double Jeopardy Clause reads: "nor shall any person be subject for the same offense to be twice put in jeopardy of life or limb." U.S.Const. amend. V.

**4.** Burks, having been convicted of robbery, filed a motion for a new trial alleging, among other things, that the evidence was insufficient to support the verdict. The district court de-

nied the motion. On appeal the court of appeals ruled that the evidence had been insufficient and remanded for a determination of whether acquittal or a new trial was appropriate. The Supreme Court ruled that once it made a determination of insufficiency of the evidence the court of appeals could only direct a verdict of acquittal.

from reversal for insufficiency of the evidence. If the reversal is for insufficiency of the evidence, the Government has failed at its "one fair opportunity to offer whatever proof it could assemble." *Id.* at 16 (footnote omitted). Such reversal "means that the government's case was so lacking that it should not have even been *submitted* to the jury." *Id.*[5] Thus, ruled the Court, a reversal for insufficiency of the evidence should be accorded the same finality as a jury verdict of acquittal.

*Burks* supports the proposition that insufficiency of the evidence in the first trial implicates the Double Jeopardy Clause; and *Abney* appears to give this court jurisdiction over the defendants' claim that a new trial would constitute double jeopardy. To avoid what otherwise appears to be the thrust of these decisions—that the instant claim is appealable—the Government argues that a double jeopardy claim based on insufficiency of the evidence cannot be collateral to the case and "separable from the issues and evidence of the impending trial." Therefore, it contends, *Abney* does not control to make such claims appealable before a final judgment.[6]

There is, however, a distinction between an appeal where the issue is whether a conviction is proper and one where double jeopardy is the focal point. As we have already noted, the Court in *Abney* enunciated that "the very nature of a double jeopardy claim is such that it is collateral to, and separable from, the principal issue at the accused's impending criminal trial, *i.e.*, whether or not the accused is guilty of the offense charged." *Abney, supra*, 431 U.S. at 659, 97 S.Ct. at 2040.

■ Although the evidence which must be reviewed when determining whether a double jeopardy claim has been demonstrated may be the same as that considered on review of a conviction, that factor does not destroy appealability. Even though the evidence is reviewed for its sufficiency, it is, as *Abney* emphasizes, the *nature* of the claim that makes the case eligible for immediate appellate review. The defendant "is contesting the very authority of the Government to hale him into court to face trial on the charge against him." *Id.* at 659, 97 S.Ct. at 2040. His position is that, based upon the paucity of evidence introduced by the prosecution in the first trial, the Government is barred by double jeopardy from proceeding with the impending trial. That is, if we determine as a matter of law that a fact finder could not have found defendants in the case at bar guilty beyond a reasonable doubt, they would be entitled to a judgment of acquittal. If, on the other hand, we were to find that there was sufficient evidence in the first trial to preclude acquittal on double jeopardy grounds, the new trial would proceed and the fact finder would then determine appellant's guilt or innocence. The Government's argument on the non-collateral nature of the evidence and the similarity of the issues, therefore, is misdirected and must be rejected.

As the Government acknowledges, in determining whether a double jeopardy claim based on the insufficiency of the evidence is appealable as a collateral order, we do not write on a clean slate in this circuit. In *United States v. United States Gypsum Co.*, 600 F.2d 414 (3d Cir.), *cert. denied*, 444 U.S. 884, 100 S.Ct. 175, 62 L.Ed.2d 114 (1979), appellants moved on remand for judgments of acquittal based on the insufficiency of the evidence at the first trial. The district court denied the motion and we permitted an immediate appeal. We reasoned:

> Because appellants' original conviction on the charges involved here was reversed on appeal, if the defendants are correct

---

5. The Court noted that because the standard for reversal is high—the appellate court "must sustain the verdict if there is substantial evidence, viewed in the light most favorable to the Government, to uphold the jury's decision"— reversal will occur for insufficiency of the evidence only where "the prosecution's failure is clear." *Burks v. United States*, 437 U.S. 1, 17,

98 S.Ct. 2141, 2150, 57 L.Ed.2d 1 (1978) (citation and footnote omitted).

6. Because in *Burks* the court of appeals reviewed a final judgment, that case is not support for our review of defendants' intermediate appeal.

that the evidence tendered at the first trial was insufficient to support a conviction, retrial would subject them to double jeopardy. *Burks v. United States,* 437 U.S. 1, 98 S.Ct. 2141, 57 L.Ed.2d 1 (1978). Consequently, they may appeal the denial of their motion at this juncture, under the "collateral order" exception to the final judgment rule. *See Abney v. United States,* 431 U.S. 651, 97 S.Ct. 2034, 52 L.Ed.2d 651 (1977).

*Id.* at 416.

The Government seeks to circumvent *Gypsum* by arguing that it should be limited to cases involving its unusual procedural history. The *Gypsum* court noted that when it remanded the case it had "reversed the appellants' convictions, though without ruling on the sufficiency of the evidence." *Id.* (citation omitted). The Government argues that our failure to rule on the sufficiency of the evidence when that case was previously before us justified our assumption of jurisdiction in *Gypsum* and distinguishes that case from the case at bar. Our analysis of *Abney* and *Burks* leads us to conclude that *Gypsum* should not be limited as the Government desires.[7]

As its final argument the Government raises the specter of the many additional appeals which may reach this court if denials of motions for acquittal based on insufficiency of the evidence are immediately appealable.[8] It points out that most convicted defendants move for acquittal and for new trial, and if a new trial is granted acquittal is almost always denied. The Government seems to be saying that many of these denials will be appealed to us if we hold that we have jurisdiction over orders denying double jeopardy claims alleging insufficiency of the evidence.

The *Abney* Court specifically addressed the contention that allowing immediate appeal from pretrial orders denying motions to dismiss on double jeopardy grounds would encourage frivolous claims. The Court in acknowledging that its holding might encourage frivolous claims implied that the full protection provided by the clause should be provided, even at such costs.[9] Should it become necessary, this court will adopt appropriate procedures to guard against frivolous claims of double jeopardy; indeed, this court has already approved a procedure to deal with the delay engendered by frivolous double jeopardy

7. The Government urges upon us decisions of the Fourth and Ninth Circuits in which defendants were not allowed to appeal denials of double jeopardy claims based on insufficiency of the evidence raised *after mistrials.* The rationale of *United States v. Carnes,* 618 F.2d 68 (9th Cir.), *cert. denied,* 447 U.S. 929, 100 S.Ct. 3028, 65 L.Ed.2d 1124 (1980), is not clear, but the court apparently equated the double jeopardy claim with "a renewed motion for judgment of acquittal or dismissal" and for that reason found it not interlocutorily appealable. *Accord United States v. Rey,* 641 F.2d 222 (5th Cir. 1981), *cert. denied,* —— U.S. ——, 102 S.Ct. 318, 70 L.Ed.2d 160 (1981); *United States v. Becton,* 632 F.2d 1294, 1297 (5th Cir. 1980), *cert. denied,* —— U.S. ——, 102 S.Ct. 141, 70 L.Ed.2d 117 (1981) (double jeopardy claims alleging insufficiency of the evidence "raise[d] only the denial of the motion to acquit," which denial is not interlocutorily appealable because not collateral to the merits). In *United States v. Ellis,* 646 F.2d 132 (4th Cir. 1981), the court found the double jeopardy claim frivolous, but indicated that it was not properly raised before a conviction because the sufficiency of the evidence was not collateral to, but went to the heart of, the merits. These cases failed to recognize the

defendants' double jeopardy rights by the simple expedient of recharacterizing the nature of their claims and they do not persuade us that our decision in *Gypsum, supra,* is incorrect.

8. The Government also notes in its brief that in the instant case two courts, the magistrate and the district court, have ruled that the evidence was sufficient to support a conviction. We conclude that prior review by the district court does not alter the basis for our review of the double jeopardy issue.

9. The Court stated:

Admittedly, our holding may encourage some defendants to engage in dilatory appeals as the Solicitor General fears. However, we believe that such problems of delay can be obviated by rules or policies giving such appeals expedited treatment. It is well within the supervisory powers of the courts of appeal to establish summary procedures and calendars to weed out frivolous claims of former jeopardy.

*Abney v. United States,* 431 U.S. 651, 662 n.8, 97 S.Ct. 2034, 2041 n.8, 52 L.Ed.2d 651 (1977).

claims. *United States v. Leppo*, 634 F.2d 101 (3d Cir. 1980).[10]

## III.

Because we conclude that we have jurisdiction of the appeal, we must determine the appropriate standard of review. The Supreme Court noted in *Burks v. United States*, 437 U.S. 1, 16, 98 S.Ct. 2141, 2150, 57 L.Ed.2d 1 (1978), that "appellate reversal [for failure of proof at trial] means that the government's case was so lacking that it should not have even been *submitted* to the jury." The Court then noted that the power of appellate reversal for insufficient evidence is quite limited because the appellate court must sustain the verdict if there is sufficient evidence to support it, viewed in the light most favorable to the Government. *Id.* at 17, 98 S.Ct. at 2150. The standard, then, for an appellate court is whether the evidence at the first trial was, as a matter of law, legally sufficient to sustain the verdict. *Hudson v. Louisiana*, 450 U.S. 40, 42–43, 101 S.Ct. 970, 972, 67 L.Ed.2d 30 (1981); *Greene v. Massey*, 437 U.S. 19, 24–25, 98 S.Ct. 2151, 2154–2155, 57 L.Ed.2d 15 (1978); *Burks v. United States, supra*, 437 U.S. at 16 n.10, 98 S.Ct. at 2150 n.10.

Appellants here were charged with criminal contempt based on their violation of the April 1, 1980, injunction prohibiting picketing and assembly in the Whitman Park construction site area. They correctly state that a finding of criminal contempt based on disobedience of a court order is possible only where the alleged violator had notice of the order. *In re Rubin*, 378 F.2d 104, 108 (3d Cir. 1967); *Yates v. United States*, 316 F.2d 718, 723 (10th Cir. 1963); *Kelton v. United States*, 294 F. 491, 494 (3d Cir. 1923). Appellants' argument is that

the evidence of their knowledge of the injunction was insufficient to support their conviction of contempt for violating it. Although they do not challenge the findings that they were at the site when the announcement was made that the April 1, 1980, injunction was being violated, they argue that the marshal's testimony that the crowd began to roar when he introduced himself and continued its noise precludes any inference that they heard that portion of the announcement mentioning the injunction.

At the trial before the magistrate a chronological series of photographs was put into evidence. A prosecution witness, using the photographs, identified appellants Robert McQuilkin and Arlene Whalin as having been at the site shortly before the marshal announced that the crowd was violating the April 1, 1980, injunction. The photographs showed appellants to be in an area within the range of the marshal's voice as amplified by the bullhorn. The magistrate found that the appellants were protesting, demonstrating, and assembling at the site on the day in question. He also found that they "were made aware of the rules against picketing and assembling in the Whitman Park construction area" by the attorney for the Whitman Council who had addressed the crowd "and advised them that this was not the proper means of protesting and that they should leave and not be arrested." The magistrate also cited articles in newspapers and other publications in the Philadelphia area proclaiming the issuance of Judge Broderick's injunction on April 1, 1980. Finally, the magistrate pointed to the bullhorn announcements by Marshal Schaeffer that the crowd was violating the

---

**10.** We stated

that an appeal from the denial of a double jeopardy motion does not divest the district court of jurisdiction to proceed with trial, if the district court has found the motion to be frivolous and supported its conclusions by written findings. Rather, both the district court and court of appeals shall have jurisdiction to proceed. Thus the defendant is entitled ultimately to appellate review. Of course, in the absence of a finding that the

motion is frivolous, the trial court must suspend its proceedings once a notice of appeal is filed. In those instances in which it refuses to do so, or when its findings are not supported by the record, the concerns of *Abney* are sufficiently safeguarded by the availability of a stay pursuant to Fed.R.App.P. 8, or a writ of mandamus or prohibition under 28 U.S.C. § 1651.

*United States v. Leppo*, 634 F.2d 101, 105 (3d Cir. 1980) (footnote omitted).

injection and to the warnings of Marshal Schaeffer and Officer Cione that arrests would be made unless they departed.

 The district court on appeal reviewed the evidence and determined "that there [was] sufficient evidence from which a rational trier of fact could conclude beyond a reasonable doubt that defendants ... McQuilkin and Whal[i]n heard the marshal's announcement.... Thus, the Court concludes that the evidence is sufficient to support the convictions...."[11] We have also reviewed the record and hold that the evidence was sufficient to support the convictions.[12]

### V.

Having determined that we have jurisdiction to entertain appellants' double jeopardy claim, we conclude that the evidence was sufficient to support their convictions. Therefore, the new trial ordered by the district court will not violate appellants' double jeopardy rights. The judgment of the district court will be affirmed.

---

11. On the motion for clarification or reconsideration the district court ruled that there was insufficient evidence that one of the original defendants, Bob Van Blunk, had actual notice of the injunction and directed the magistrate to enter a judgment of acquittal with respect to him. The court noted that the first photograph showing this defendant was taken near the time of his arrest, and ruled that his presence at the site at that time and his willingness to submit to arrest were not sufficient to support an inference that he had knowledge that he was violating the injunction.

12. *United States v. Wefers*, 435 F.2d 826 (1st Cir. 1970), and *United States v. Jackson*, 426 F.2d 305 (5th Cir. 1970), cited by appellants do not persuade us that the appellants here lacked

knowledge of the injunction. In *Wefers* the appellate court found that the first court order issued was ambiguous and determined that the defendant never received notice of the supplemental order. It concluded that Wefers could not be guilty of contempt because he did not violate a court order with knowledge that its prohibition applied to him.

Similarly, in *Jackson* the court held that because there was no evidence that Jackson knew the terms of the injunction or that it applied to her she could not be held in contempt for violating it. In the instant case, on the other hand, there was evidence from which it could be inferred that appellants violated the injunction with knowledge that they were so doing.