UNITED STATES of America

v.

**Carroll LEPPO, Petitioner.**

UNITED STATES of America

v.

**LEPPO, Carroll, Appellant.**

Nos. 80–2225, 80–2277.

United States Court of Appeals, Third Circuit.

Submitted Under Third Circuit Rule 12(6) Aug. 26, 1980.

Decided Nov. 5, 1980.

Daniel W. Shoemaker, Shoemaker, Thompson & Ness, York, Pa., for petitioner Leppo.

Carlon M. O'Malley, Jr., U. S. Atty., Frederick E. Martin, Asst. U. S. Atty., Lewisburg, Pa., for respondent.

Before ALDISERT, ROSENN and GARTH, Circuit Judges.

## OPINION OF THE COURT

ALDISERT, Circuit Judge.

Twenty–five circuit judges constituting a court in banc rarely achieve unanimity in the result, reasoning, and contents of an opinion, but that is exactly what happened in the case of *United States v. Dunbar*, 611 F.2d 985 (5th Cir. 1980) (in banc). *Dunbar* presented the identical issue before us in this motion for a stay and petition for a writ of mandamus: does an appeal from the denial of a motion for dismissal on grounds of double jeopardy, deemed frivolous by the district court, divest that court of jurisdiction to proceed with trial? The Fifth Circuit held that it does not. We agree for the reasons stated by that court and deny petitioner's motion for stay of proceedings and the petition for a writ of mandamus directed to Judge Malcolm Muir.

I.

Indicted on various counts of obstructing interstate commerce, 18 U.S.C. § 1951(b)(3), and extortion, 18 U.S.C. § 1951(b)(2), petitioner Carroll Leppo moved to suppress certain evidence. Judge Muir held a suppression hearing on June 16, 1980. At the hearing, FBI agent Frank A. Cryan testified that Leppo had refused to answer certain questions during the course of a debriefing following a polygraph examination.[1] Leppo's counsel lodged no objection to Cryan's testimony at the hearing. At the ensuing trial Agent Cryan testified essentially to the same circumstances.[2] Counsel did not

1. Agent Cryan's testimony at the hearing was, in relevant part, as follows:

We asked him if it was improper [to accept the money] and he said, yes, but it didn't sway my vote in any way for the architectural contract. Then in the presence of Mr. Shoemaker, I asked him when he got the money and he answers, no. I asked him where and he said no, and I asked him how much, and he said, no. And I asked him who else [was] there, and he says, no. The no's indicating that he did not want to discuss that, going back to the earlier agreement as to what we could ask him....

Transcript of Testimony of Frank A. Cryan, June 16, 1980, at 23–24.

2. Agent Cryan testified to the following:

Q. Will you tell the court and jury precisely what Mr. Leppo stated to you, if you recall?

A. [Mr. Leppo stated] ..., "Okay, it's improper" for me to accept [the money]. "I did anyway. I don't see it as illegal." I never asked for it. Warner just gave it to me.... There was no mention of what it was for or what was expected. There was no need to because we both knew the intended purpose of the cash. We then asked Mr. Leppo what, or what the intended purpose of the cash was and he said, "To influence my vote." But the cash didn't influence my vote–did not, right. He, Warner, offered it and I told him I would accept it and I planned on applying it to my campaign debts or bills. We asked him at that point whether he thought it was improper and he said, yes, but it didn't sway my vote in any way for the architectural contract. We then asked him some other questions dealing with when the request, or when the offer and the transfer was made, where it was made, how much money was involved

object to the question, but moved for a mistrial on the basis of the response. Judge Muir took the motion under advisement. Subsequently, the court permitted cross and redirect examination of Cryan, the government's final witness, but then granted the defendant's motion for a mistrial on June 19, 1980. The case was listed for retrial in August, 1980, but at Leppo's request it was postponed until September, 1980. On August 4, 1980, more than six weeks after the court declared a mistrial, Leppo moved for a dismissal of the indictment on the ground of double jeopardy, alleging that the government's elicitation of the particular testimony from Agent Cryan "constituted substantial prosecutorial misconduct." Petition for Writ of Mandamus, Exh. B at 1.

Judge Muir rejected the motion to dismiss as dilatory and frivolous, and ordered the case to remain on the trial calendar. The court concluded that the motion was dilatory because Leppo waited more than six weeks after the mistrial was granted before moving for dismissal. *United States v. Leppo*, Crim. No. 80–00034, order at 2 (M.D.Pa. August 22, 1980). In the interim, Leppo had requested and the trial court had granted a one month postponement of his trial. Judge Muir found that Leppo's unexplained delay indicated "a desire on [his] part to postpone as long as possible his trial." *Id.* Leppo's motion was frivolous, the court concluded, because in its view Agent Cryan's comment about Leppo's refusal to answer certain questions was inadvertent and not the result of bad faith, reckless, or grossly negligent conduct. *Id.* Moreover, the court determined that the asserted damage could have been avoided by a proper objection because "virtually identical testimony was given during a suppression hearing...." *Id.* at 3.

The defendant filed a petition for Writ of Mandamus or Prohibition at No. 80–2225, and a motion for a stay of the district court's proceeding pending his appeal at No. 80–2277. We denied both by order on September 2, 1980. This opinion explains our action.

## II.

We agree with the district court that Leppo's motion to dismiss was both dilatory and frivolous. Trial counsel cannot sit back in a suppression hearing and allow damaging testimony against a defendant to be elicited without objection, and then impugn bad faith motives to the government for introducing the same testimony a few days later at trial. Trial strategies being what they are, we cannot find prosecutorial misconduct when defense counsel elects not to challenge testimony at a suppression hearing and then attempts to build a double jeopardy case by obtaining a mistrial because the same testimony is introduced into evidence.

This is not a case in which a defendant's conviction has been overturned because the government failed to produce sufficient evidence. In such circumstances, double jeopardy bars retrial. *See Burks v. United States*, 437 U.S. 1, 15–16, 18, 98 S.Ct. 2141, 2149–50, 2150–51, 57 L.Ed.2d 1 (1978). The double jeopardy clause does not bar retrial in cases like this one in which the judicial process was defective as a result of incorrect receipt of evidence. *See United States v. Dinitz*, 424 U.S. 600, 606–607, 96 S.Ct. 1075, 1078–79, 47 L.Ed.2d 267 (1976); *United States v. Jorn*, 400 U.S. 470, 480, 91 S.Ct. 547, 554, 27 L.Ed.2d 543 (1971) (opinion of Harlan, J.). The trial court declared a mistrial in compliance with the manifest necessity doctrine originally articulated in *United States v. Perez*, 22 U.S. (9 Wheat.) 579, 6 L.Ed. 165 (1824), and properly ordered a new trial. *See generally United States v. Tateo*, 377 U.S. 463, 465, 84 S.Ct. 1587, 1588, 12 L.Ed.2d 448 (1964); *United States v. Ball*, 163 U.S. 662, 671–72, 16 S.Ct. 1192, 1195, 41 L.Ed. 300 (1896);

---

and who else was present, to which Mr. Leppo indicated he desired not to answer. Testimony of Frank A. Cryan, June 18, 1980, at 4–6. The portions of the response enclosed in quotation marks are direct quotations; other portions Agent Cryan testified were substantially verbatim responses of Leppo. At this point petitioner's counsel was granted a sidebar at which he moved for a mistrial. *Id.* at 6.

*United States v. Tinney,* 473 F.2d 1085, 1088 (3d Cir), *cert. denied,* 412 U.S. 928, 93 S.Ct. 2752, 37 L.Ed.2d 156 (1973).

### III.

The question presented here requires us to balance on one hand the principles underlying both *Abney v. United States,* 431 U.S. 651, 97 S.Ct. 2034, 52 L.Ed.2d 651 (1977), and the usual rule that a trial court is divested of jurisdiction over a case when a notice of appeal is filed, against the public policy favoring the rapid disposition of criminal cases, recently expressed by Congress in the Speedy Trial Act, 18 U.S.C. §§ 3161–3174. On a less abstract level, it requires us to decide whether a defendant in a criminal case can delay his trial for an extended period by means of a dilatory and frivolous appeal.

In *Abney,* the Supreme Court held that the denial of a motion to dismiss on grounds of double jeopardy is an appealable final order for purposes of 28 U.S.C. § 1291(a), under the collateral order exception announced in *Cohen v. Beneficial Industrial Loan Corp.,* 337 U.S. 541, 69 S.Ct. 1221, 93 L.Ed. 1528 (1949). The reason compelling the decision was that the right protected by the double jeopardy clause includes the right not to be twice put to *trial* for the same offense. Absent a provision for an immediate appeal, the right would be forever lost, regardless of the outcome of the trial. 431 U.S. at 660–61, 97 S.Ct. at 2040–41.

The *Abney* decision had the effect of providing criminal defendants with an effective new tool for delaying their trials for long periods of time. An *Abney* appeal delays trial because ordinarily the trial court loses its power to proceed once a party files a notice of appeal. *See Hovey v. McDonald,* 109 U.S. 150, 157, 3 S.Ct. 136, 140, 27 L.Ed. 888 (1883); *SEC v. Investors Security Corp.,* 560 F.2d 561, 568 (3d Cir. 1977); *United States v. Lafko,* 520 F.2d 622, 627 (3d Cir. 1975); *Plant Economy, Inc. v. Mirror Insulation Co.,* 308 F.2d 275, 276–77 (3d Cir. 1962), *overruled on other grounds, Torockio v. Chamberlain Manufacturing Co.,* 456 F.2d 1084, 1087 (3d Cir. 1972). This rule is not based on statutory provisions or the rules of procedure. Rather, it is a judge–made rule designed to avoid confusion or waste of time that might flow from putting the same issues before two courts at the same time. As Professor Moore has observed, the rule "should not be employed to defeat its purpose or to induce needless paper shuffling." 9 J. Moore, Federal Practice ¶ 203.11 at 3–44 n.1 (1980); *see* C. Wright, A. Miller, E. Cooper, & E. Gressman, Federal Practice and Procedure § 3949, at 358–59 (1977).

A ritualistic application of the divestiture rule in the *Abney* context conflicts with the public policy favoring rapid adjudication of criminal prosecutions. It is not uncommon for an appeal to take a full year before final resolution. In passing the Speedy Trial Act, Congress recognized that the public has a substantial interest in the resolution of prosecutions without needless delay. As the House Report noted at the outset: "The purpose of this bill is to assist in reducing crime and the danger of recidivism by requiring speedy trials and by strengthening the supervision over persons released pending trial." H.R.Rep. No. 1508, 93d Cong., 2d Sess. 1, *reprinted in* [1974] U.S. Code, Cong. & Ad. News 7401, 7402; *see also,* H.R.Rep. No. 390, 96th Cong. 1st Sess. 3, *reprinted in* [1979] U.S. Code, Cong. & Ad. News 805, 807.

Prior to *United States v. Dunbar,* the Fifth Circuit had decided that the notice of appeal from a nonappealable order does not render void for lack of jurisdiction acts of the district court performed during the interval between the filing of the notice and the dismissal of the appeal. *United States v. Hitchmon,* 602 F.2d 689, 691 (5th Cir. 1979) (in banc). In rejecting its former mechanical application of the divestiture of jurisdiction rule, the court reasoned that "the contrary rule leaves the court powerless to prevent intentional dilatory tactics, forecloses without remedy the nonappealing party's right to continuing trial court jurisdiction and inhibits the smooth and efficient functioning of the judicial process." *Id.* at

 

694. This court has indicated that it would accept the position reached in *Hitchmon.* See *Plant Economy, Inc.,* 308 F.2d at 277 n.7; *see also Tucker v. Reading Co.,* 53 F.R.D. 453, 455 (E.D.Pa.1971); *but see District 65, Distributive, Processing & Office Workers Union v. McKague,* 216 F.2d 153, 155 (3d Cir. 1954). *Dunbar* and *Hitchmon* recognized that "a decision as to whether jurisdiction exists in a trial or appellate court, or both, can be the product of a reasoned choice." *Dunbar,* 611 F.2d at 987, (quoting Patrick E. Higginbotham, District Judge, concurring in panel opinion, *United States v. Hitchmon,* 587 F.2d 1357, 1362–63 (5th Cir. 1979)).

We agree that the need for a "reasoned choice" is present here, and we accept the analysis of the Fifth Circuit in *Dunbar*:

> On the one hand, the Court must recognize that the failure to review a colorable double jeopardy claim before trial begins creates a substantial risk that the accused's constitutional rights will be infringed. On the other hand, we must weigh the concern expressed in *Hitchmon,* that the divestiture of jurisdiction rule
>
>> leaves the court powerless to prevent intentional dilatory tactics, forecloses without remedy the nonappealing party's right to continuing trial court jurisdiction, and inhibits the smooth and efficient functioning of the judicial process.
>
> [*Hitchmon,*] 602 F.2d at 694.

611 F.2d at 988. The facts here are indicative of the great potential for disruption if, when confronted with a frivolous double jeopardy motion, we did not permit the district court to retain jurisdiction.[3]

 Therefore, in the exercise of our supervisory jurisdiction, and recognizing fully the letter and spirit of *Abney v. United States,* we hold that an appeal from the denial of a double jeopardy motion does not divest the district court of jurisdiction to proceed with trial, if the district court has found the motion to be frivolous and supported its conclusions by written findings. Rather, both the district court and court of appeals shall have jurisdiction to proceed. Thus the defendant is entitled ultimately to appellate review. Of course, in the absence of a finding that the motion is frivolous, the trial court must suspend its proceedings once a notice of appeal is filed. In those instances in which it refuses to do so, or when its findings are not supported by the record, the concerns of *Abney* are sufficiently safeguarded by the availability of a stay pursuant to Fed.R.App.P. 8, or a writ of mandamus or prohibition under 28 U.S.C. § 1651.[4] *See Dunbar,* 611 F.2d at 989. Petitioner has used these procedures here, demonstrating their viability. At the same time, this decision gives effect to the important public policy favoring expeditious criminal justice.

The Petition for Writ of Mandamus or Prohibition at No. 80–2225 and the motion for stay of proceedings pending appeal at No. 80–2227 having been denied by order dated September 2, 1980, we set forth the foregoing as the reason for our decision.

---

**3.** As the *Dunbar* court recognized, district courts have extensive experience in deciding whether matters are frivolous. 611 F.2d at 988; *see e. g. Coppedge v. United States,* 369 U.S. 438, 443–45, 82 S.Ct. 917, 920–21, 8 L.Ed.2d 21 (1962) (denial of leave to appeal in forma pauperis if appeal is frivolous); 18 U.S.C. § 3148 (denial of bail if appeal is frivolous); 28 U.S.C. § 1915(d) (dismissal of in forma pauperis cases). Indeed, in considering a double jeopardy motion, the district court must determine whether a defendant has tendered a prima facie nonfrivolous double jeopardy claim before shifting the burden of persuasion to the government. *See United States v. Stricklin,* 591 F.2d 1112, 1117–18 (5th Cir.), *cert. denied,* 444 U.S. 963, 100 S.Ct. 449, 62 L.Ed.2d 375 (1979).

**4.** *Abney* itself contemplated the adoption by the Courts of Appeals of expedited means of handling double jeopardy appeals, thereby minimizing their strategic value to defendants. 431 U.S. at 662 n.8, 97 S.Ct. at 2042 n.8.