**DEATH ROW PRISONERS OF PENNSYLVANIA, including, Michael Rainey, James Smith, Tyronne Moore, George Edwards, Scott Blystone and Roland Steele, for themselves and all other Pennsylvania Death Row Prisoners who are similarly situated,**

v.

**Thomas RIDGE, individually and in his official capacity as Governor of the Commonwealth of Pennsylvania; Thomas Corbett, individually and in his official capacity as Attorney General of the Commonwealth of Pennsylvania; Martin Horn, individually and in his official capacity as Commissioner of the Department of Corrections of the Commonwealth of Pennsylvania, and Other Employees and Officers of the Commonwealth of Pennsylvania Whose Identities are Presently Not Known.**

Civil Action No. 96–3179.

United States District Court, E.D. Pennsylvania.

Nov. 25, 1996.

    Robert Brett Dunham, Billy H. Nolas, Michael Wiseman, David Wycoff, PA, Post–Conviction Defender Organization, Philadelphia, PA, Shelley Stark, Federal Public Defender's Office, Pittsburgh, PA, for Death

Row Prisoners of Pennsylvania, including Michael Rainey.

Billy H. Nolas, Michael Wiseman, David Wycoff, PA Post–Conviction Defender Organization, Philadelphia, PA, for James Smith, Tyronne Moore, George Edwards, Scott Blystone, and Roland Steele.

Sarah B. Vandenbraak, Chief, Civil & Exceptional Litigation, Philadelphia, PA, Daniel J. Doyle, Office of Attorney General, Harrisburg, PA, Syndi L. Guido, Deputy General Counsel's Office, Harrisburg, PA, for Thomas Ridge and Martin Horn.

Sarah B. Vandenbraak, Chief, Civil & Exceptional Litigation, Philadelphia, PA, Amy Zapp, Deputy Attorney General, Daniel J. Doyle, Office of Attorney General, Harrisburg, PA, Syndi L. Guido, Deputy General Counsel's Office, Harrisburg, PA, for Thomas Corbett.

## MEMORANDUM

PADOVA, District Judge.

Plaintiffs, death row prisoners in the Commonwealth of Pennsylvania, filed this action against sundry Commonwealth officials, seeking a declaratory judgement that the Commonwealth of Pennsylvania is not an "opt-in" jurisdiction as that term is used and understood in the context of the Habeas Corpus provisions of the recently enacted Antiterrorism and Effective Death Penalty Act of 1996. Pub.L. No. 104–132, 110 Stat. 1214 (1996).

The named Defendants in this suit are Governor Thomas Ridge, Attorney General Thomas Corbett, and Commissioner Martin Horn of the Pennsylvania Department of Corrections ("Defendants"). Each Defendant is sued in his official and individual capacity.

Before the Court is Plaintiffs' Motion for Preliminary Injunctive and Declaratory Relief Pending Appeal against Defendants Ridge and Horn. For the reasons that follow, that Motion is dismissed for want of jurisdiction.

## I. Introduction

By Memorandum and Order dated October 17, 1996 this Court denied Defendants' Motion to Dismiss for failure to state a claim upon which relief could be granted. In denying that Motion, this Court specifically rejected, among other defenses, the notion that Plaintiffs' action is barred by the Eleventh Amendment of the United States Constitution.

■ Thereafter, the Court proceeded to consider Plaintiffs' Motion for Preliminary Injunctive and Declaratory Relief. During the pendency of that Motion, however, Defendants Ridge and Horn filed a notice of appeal, seeking interlocutory review [1] by the United States Court of Appeals for the Third Circuit of the Eleventh Amendment question.[2]

Defendants Ridge and Horn submitted that, in light of the pendency of their appeal, this Court no longer had jurisdiction to entertain Plaintiffs' Motion for Preliminary Injunctive and Declaratory Relief. By telephone conference, Plaintiffs then modified their request for Preliminary Injunctive and Declaratory Relief to a request for Preliminary Injunctive and Declaratory Relief *Pending Appeal* against Defendants Ridge and Horn. (Tr. Oral Argument 11/30/96 at 2).

Plaintiffs argue that this Court retains jurisdiction to decide their Motion because Defendants' appeal is "frivolous." Alternatively, Plaintiffs contend that the Court retains jurisdiction to decide their Motion on the basis of Fed.R.Civ.P. 62(c).

For the reasons that follow, however, I agree with Defendants Ridge and Horn.

---

1. It is well established, pursuant to *Cohen v. Beneficial Indus. Loan Corp.*, 337 U.S. 541, 69 S.Ct. 1221, 93 L.Ed. 1528 (1949), and its progeny, that state defendants may seek interlocutory review of adverse Eleventh Amendment rulings. *Puerto Rico Aqueduct & Sewer Auth. v. Metcalf & Eddy, Inc.*, 506 U.S. 139, 113 S.Ct. 684, 121 L.Ed.2d 605 (1993) (collateral order doctrine allows immediate appellate review of order denying claim of Eleventh Amendment immunity).

2. The Attorney General did not join in the interlocutory Eleventh Amendment appeal. Thus, there remains outstanding, as against the Attorney General, a Motion for Preliminary Injunction (not pending appeal).

## II. Discussion

### A. Frivolity

■ Generally speaking, the timely filing of a notice of appeal divests the district court of any further authority over those aspects of the case on appeal. *Griggs v. Provident Consumer Discount Co.,* 459 U.S. 56, 58, 103 S.Ct. 400, 402, 74 L.Ed.2d 225 (1982) ("[A] federal district court and a federal court of appeals should not attempt to assert jurisdiction over a case simultaneously. The filing of a notice of appeal is an event of jurisdictional significance—it confers jurisdiction on the court of appeals and divests the district court of its control over those aspects of the case involved in the appeal") (per curiam); Allan Ides, *The Authority of a Federal District Court to Proceed After Notice of Appeal Has Been Filed,* 143 F.R.D. 307, 309 (1992) ("the filing of a timely and sufficient notice of appeal automatically transfers jurisdiction from the district court to the court of appeals").

There is an exception, however, to the transfer of jurisdiction principle in cases like the one *sub judice,* involving collateral orders.

> If the law provides a party with a right to an interlocutory appeal ... the normal rule of jurisdictional transfer will be applied with respect to those matters from which the appeal is taken. For example, if a district court rules on a matter that qualifies as a "collateral order" ... that ruling is immediately appealable. A properly filed notice of appeal will transfer jurisdiction over that collateral order from the district court to the court of appeals. *If, however, the claim underlying the collateral order is frivolous, the attempted appeal will not divest the district court of its jurisdiction.* In essence, a frivolous appeal from a collateral order is treated the same as an attempted appeal from a nonappealable interlocutory order. In both circumstances, the district court may ignore the notice of appeal and proceed as if no notice had been filed ... This variation on collateral order appeals has been applied frequently in the contexts of double jeopardy and qualified immunity.

*Id.* at 312–13. (citing, *inter alia, United States v. Leppo,* 634 F.2d 101, 105 (3rd Cir. 1980) (emphasis added)).

In *Leppo,* the Third Circuit established the frivolity exception to the transfer of jurisdiction principle. The defendant in *Leppo* was prosecuted for extortion and for obstructing interstate commerce. On the basis of certain suspect testimony proffered by the prosecution, the district judge granted defendant's motion for a mistrial. Six weeks after the court declared a mistrial, and had already listed the case for retrial, defendant moved for a dismissal of the indictment on grounds of double jeopardy. The trial court rejected that motion and plaintiff sought interlocutory review thereof pursuant to *Abney v. United States,* 431 U.S. 651, 97 S.Ct. 2034, 52 L.Ed.2d 651 (1977) (holding the denial of a motion to dismiss on grounds of double jeopardy to be appealable final order for purposes of 28 U.S.C.A. § 1291(a) (West 1993) under collateral order exception announced in *Cohen*).

While ordinarily the filing of an appeal on the double jeopardy question would have divested the district court of jurisdiction to proceed any further, the trial court in *Leppo* found the appeal to be frivolous and, therefore, retained jurisdiction. The Third Circuit affirmed, rejecting what it termed "[a] ritualistic application of the divestiture rule." *Leppo,* 634 F.2d at 104. Concerned that the right to seek interlocutory review of double jeopardy claims provides "criminal defendants with an effective new tool for delaying their trials for long periods of time," *id.* at 104, the Third Circuit held that "an appeal from the denial of a double jeopardy motion does not divest the district court of jurisdiction ... if the district court has found the motion to be frivolous and supported its conclusions by written findings." *Id.* at 105. *See also United States v. Ciancaglini,* 858 F.2d 923, 926 n. 3 (3rd Cir.1988) ("Under our decision in [*Leppo*], a finding by the district court that the double jeopardy claim is frivolous gives it continuing jurisdiction....").

Other circuits also recognize this frivolity exception. *See Chuman v. Wright,* 960 F.2d 104, 105 (9th Cir.1992) (adopting frivolity exception in context of qualified immunity in-

terlocutory appeals); *Yates v. Cleveland*, 941 F.2d 444, 448 (6th Cir.1991) (citing *Apostol, infra,* with approval); *Johnson v. Hay*, 931 F.2d 456, 459 n. 2 (8th Cir.1991) (in context of qualified immunity defense, jurisdiction is transferred to court of appeals unless "appeal is utterly lacking in merit and for the purpose of delay only"); *Stewart v. Donges*, 915 F.2d 572, 576 (10th Cir.1990) (frivolity exception to transfer of jurisdiction principle applies in context of qualified immunity defense); *Apostol v. Gallion*, 870 F.2d 1335, 1338 (7th Cir.1989) (same); *United States v. Hines*, 689 F.2d 934, 937 (10th Cir.1982) (district court not divested of jurisdiction in context of double jeopardy defense if "[1] after a hearing and, [2] for substantial reasons given, [3] [district court] found the claim to be frivolous"); *United States v. Dunbar*, 611 F.2d 985, 988 (5th Cir.1980) (en banc), *cert. denied,* 447 U.S. 926, 100 S.Ct. 3022, 65 L.Ed.2d 1120 (1980) ("Henceforth, the district courts, in any denial of a double jeopardy motion, should make written findings determining whether the motion is frivolous or nonfrivolous . . .").

■ The Third Circuit has not specifically applied the frivolity exception in the sovereign immunity context. Nonetheless, as in *Leppo,* Defendants Ridge and Horn seek interlocutory review of a collateral order that is treated as an appealable final order for purposes of 28 U.S.C.A. § 1291. Also, as in *Leppo,* the interlocutory appealability of Eleventh Amendment questions offers Defendants Ridge and Horn a means by which to delay the judicial proceedings for tactical reasons. I therefore see no reason why the frivolity exception with regard to interlocutory double jeopardy appeals should not apply with equal force to interlocutory Eleventh Amendment appeals. In short, I believe *Leppo* authorizes this Court to entertain Plaintiffs' Motion for Preliminary Injunctive and Declaratory Relief Pending Appeal *if* it finds the Eleventh Amendment appeal of Defendants Ridge and Horn to be frivolous.[3]

Although *Leppo* does not precisely define "frivolous," in *Dreibelbis v. Marks,* the Third

Circuit acknowledged that it has, in the past, "implicitly adopted the standard of frivolousness applied by the Supreme Court in [*Anders v. California*, 386 U.S. 738, 744, 87 S.Ct. 1396, 1400, 18 L.Ed.2d 493 (1967), *reh'g denied,* 388 U.S. 924, 87 S.Ct. 2094, 18 L.Ed.2d 1377 (1967) ]: [to wit,] a matter is not frivolous if any of the legal points are arguable on their merits." 675 F.2d 579, 580 (3rd Cir. 1982) (internal quotations omitted); *Deutsch v. United States,* 67 F.3d 1080, 1086 n. 6 (3rd Cir.1995) (same); *Keno v. Doe*, 74 F.R.D. 587, 588 (D.N.J.1977), *aff'd,* 578 F.2d 1374 (3rd Cir.1978) (defining "frivolous action" as one in which "realistic chances of ultimate success are slight"); *Galloway Farms, Inc. v. United States*, 834 F.2d 998, 1000–01 (Fed. Cir.1987) (stating that "other circuits have succinctly defined frivolous claims or appeals as those which involve legal points not arguable on their merits, or those whose disposition is obvious") (internal quotations and citations omitted). *See also Neitzke v. Williams*, 490 U.S. 319, 320, 109 S.Ct. 1827, 1829, 104 L.Ed.2d 338 (1989) (stating that frivolity is not co-extensive with failure to state a claim and that complaints dismissed for failure to state a claim may raise arguable, but ultimately uncognizable, claims whereas frivolity applies to class of claims that are inarguable).

The question before the Court, therefore, is whether the Eleventh Amendment appeal of Defendants Ridge and Horn raises any legal points which are arguable on their merits.

### 1. Seminole Tribe

■ Defendants Ridge and Horn contend that *Seminole Tribe of Florida v. Florida,* —— U.S. ——, 116 S.Ct. 1114, 134 L.Ed.2d 252 (1996), renders their Eleventh Amendment appeal nonfrivolous because it arguably bars Plaintiffs' action.

■ In *Seminole Tribe,* the Supreme Court of the United States disallowed a collateral, *Ex parte Young,* 209 U.S. 123, 28

---

**3.** As the *Leppo* court acknowledged, "district courts have extensive experience in deciding whether matters are frivolous." 634 F.2d at 105 n. 3. (citation omitted).

S.Ct. 441, 52 L.Ed. 714 (1908),[4] suit when the federal statute which was allegedly transgressed—and which was the subject of the *Ex parte Young* action—itself contained a remedy for the violations: "[w]here Congress has created a detailed remedial scheme for the enforcement of a particular right, we have, in suits against federal officers, refused to supplement that scheme with one created by the judiciary." *Id.* at ——, 116 S.Ct. at 1132 (quotation and citation omitted).

Defendants Ridge and Horn argue that even though this Court disagreed in adjudicating the Motion to Dismiss, it is, nonetheless, arguable that the habeas framework contains a sufficiently "detailed remedial scheme" such that *Seminole Tribe* renders *Ex parte Young* inapplicable. I disagree.

Neither in the extensive briefing in support of their Motion to Dismiss, nor during oral argument[5] on the instant Motion, were Defendants Ridge and Horn able to point to a single provision of the habeas scheme—including the Anti–Terrorism and Effective Death Penalty Act amendments thereto—which would in any way permit Plaintiffs to learn whether Pennsylvania is an opt-in state and, by so learning, to know whether the longer or the shorter statute of limitations applies to their habeas appeals.

In their Brief in Opposition to Certification of the Eleventh Amendment Appeal as Frivolous, ("Defs.' Br."), Defendants Ridge and Horn expend considerable ink proving what the Court and Plaintiffs readily acknowledge: that the federal habeas regime contains a detailed remedial scheme. However, under the Supreme Court's teaching in *Seminole Tribe*, the proper inquiry is not whether the statute contains a detailed remedial scheme, but whether it contains a detailed remedial scheme *for the vindication of the right which is the subject of the Ex parte Young suit.* In this regard, I can confidently state that, even after the recent amendments, the habeas framework contains absolutely no provision which would enable Plaintiffs to vindicate their due process right to know which statute of limitations applies to death row habeas petitions. In fact, the habeas opt-in provisions of the Anti–Terrorism and Effective Death Penalty Act are so devoid of any remedy to vindicate that right, that to assert otherwise is simply inarguable; hence, frivolous.

### 2. Constitutional Right

Defendants Ridge and Horn argue, in the alternative, that their Eleventh Amendment appeal is not frivolous because, on review, analysis of the Eleventh Amendment issue necessarily requires revisiting the question as to whether Plaintiffs have "established the existence of any constitutional right at all." (Defs.' Br. at 10). In other words, because Plaintiffs' claim of "a due process right to know" is itself "arguable," Defendants Ridge and Horn contend that any appeal in which this question is scrutinized renders that appeal nonfrivolous.

I agree that whether there exists an underlying right to know in the instant case is arguable. Therefore, in weighing the argument of Defendants Ridge and Horn, the question is whether it is frivolous to suggest that, on appeal of an adverse Eleventh Amendment ruling, the circuit court will review the underlying constitutional right that forms the foundation for the application of *Ex parte Young.*[6] I believe the answer is no.

---

**4.** This doctrine carves out an exception to Eleventh Amendment immunity when a suit against a state defendant "seeks only prospective injunctive relief in order to end a continuing violation of federal law." *Seminole Tribe,* —— U.S. at ——, 116 S.Ct. at 1132 (quotation and citation omitted).

**5.** *See* Tr. Oral Argument 10/30/96 at 6–8.

**6.** "The eleventh amendment has been construed [in *Ex parte Young* and its progeny] by the Supreme Court not to bar an action in federal court against the state or its officers ... for prospective injunctive relief *from unconstitutional state ac-*

*tions." Skehan v. Bd. of Trustees of Bloomsburg State College,* 590 F.2d 470, 486 (3rd Cir.1978), cert. denied, 444 U.S. 832, 100 S.Ct. 61, 62 L.Ed.2d 41 (1979) (emphasis added). *Halderman v. Pennhurst State School & Hosp.,* 673 F.2d 647, 656 (3rd Cir.1982) ("Thus it is quite plain that the Eleventh Amendment is no bar to the prospective injunctive relief which was ordered by the district court *insofar as that relief is predicated on constitutional or federal statutory claims* "), rev'd on other grounds, 465 U.S. 89, 104 S.Ct. 900, 79 L.Ed.2d 67 (1984) (emphasis added).

There is no case which squarely delineates the scrutiny to which the Third Circuit must subject interlocutory Eleventh Amendment appeals. A paragraph from the Supreme Court case *Siegert v. Gilley*, 500 U.S. 226, 111 S.Ct. 1789, 114 L.Ed.2d 277, *reh'g denied*, 501 U.S. 1265, 111 S.Ct. 2920, 115 L.Ed.2d 1084 (1991), however, is sufficient to prove that the position of Defendants Ridge and Horn on this matter is not frivolous. In *Siegert*, which dealt with the defense of qualified immunity, the Court noted that,

> In *Harlow* [*v. Fitzgerald*, 457 U.S. 800, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982) ] we said that "[u]ntil this *threshold* immunity question is resolved, discovery should not be allowed." *A necessary concomitant to the determination of whether the constitutional right asserted by a plaintiff is "clearly established" at the time the defendant acted is the determination of whether the plaintiff has asserted a violation of a constitutional right at all.* Decision of this purely legal question permits courts expeditiously to weed out suits which fail the test without requiring a defendant who rightly claims qualified immunity to engage in expensive and time consuming preparation to defend the suit on its merits. One of the purposes of immunity, absolute or qualified, is to spare a defendant not only unwarranted liability, but unwarranted demands customarily im-

posed upon those defending a long drawn out lawsuit.

*Id.* at 232, 111 S.Ct. at 1793 (emphasis added) (citations omitted). *See also D.R. by L.R. v. Middle Bucks Area Vocational Technical School*, 972 F.2d 1364, 1368 (3rd Cir.1992), *cert. denied*, 506 U.S. 1079, 113 S.Ct. 1045, 122 L.Ed.2d 354 (1993) (reviewing qualified immunity defense on appeal and stating that "the predicate question . . . [is] whether plaintiffs allege deprivation of any right secured by the constitution. We will, therefore, consider plaintiffs' allegations of constitutional error as they relate to all of the defendants") (quotation and citation omitted).

On the strength of this paragraph, I cannot say that it is frivolous to suggest that a review of the Eleventh Amendment appeal of Defendants Ridge and Horn will entail an examination of the cognizability of the underlying constitutional right which Plaintiffs contend is being infringed.[7] For this reason, I cannot conclude that the Eleventh Amendment appeal of Defendants Ridge and Horn is frivolous.[8]

### B. Rule 62(c)

Plaintiffs' last argument is that Fed. R.Civ.P. 62(c) gives this Court continuing jurisdiction to entertain their Motion for Preliminary Injunctive and Declaratory Relief Pending Appeal. The Rule provides, in relevant part, that

---

**7.** Plaintiffs argue that "appeals in qualified immunity cases necessarily involve the merits of the underlying claim. By contrast, under *Young*—which embodies an exception to a different immunity defense—the issue is whether the suit falls into the 'class of suits' authorized by *Young*" (Pls.' Mem.Supp. Certification of Eleventh Amendment Appeal of Defs.' Ridge and Horn as Frivolous at 9) ("Pls.' Mem."). This may well be. Nonetheless, this Court cannot rest a finding of inarguability on distinguishing sister lines of immunity jurisprudence.

Furthermore, Plaintiffs rely upon *Triad Assoc., Inc. v. Robinson*, 10 F.3d 492, 496–97 n. 2 (7th Cir.1993), to support their argument that nonappealable issues "cannot be bootstrapped" to appealable collateral orders. In *Triad*, however, the nonappealable issues which the defendant sought to "bootstrap," (citing *Siegert* ), were statute of limitations and standing defenses. Thus, *Triad* does not stand for the proposition that on interlocutory appeal of a qualified immunity question, the court cannot review the constitutional violation alleged by plaintiff. On

the contrary, the court stated that although "it may seem curious to review plaintiff's complaint for its general sufficiency in stating a claim, determining whether a plaintiff has asserted a constitutional violation at all is '[a] necessary concomitant to the determination of [qualified immunity].'" *Id.* (citing *Siegert*, 500 U.S. at 232, 111 S.Ct. at 1793).

**8.** If Defendants Ridge and Horn had argued the inarguable, for example that this suit is barred because it seeks prospective injunctive relief, then this Court might well have found frivolity. *Halderman*, 673 F.2d at 656 ("Thus, insofar as prospective injunctive relief is sought against those defendants, the case is a classic example of an action falling within *Ex parte Young*"); *Conover v. Montemuro*, 477 F.2d 1073, 1086 (3rd Cir.1972) ("Federal injunctive relief as a remedy for alleged unconstitutional action by state officials is neither novel nor noteworthy [under *Ex parte Young* ]").

[w]hen an appeal is taken from an interlocutory or final judgment granting, dissolving, or denying an injunction, the court in its discretion may suspend, modify, restore or grant an injunction during the pendency of the appeal upon such terms as to bond or otherwise as it considers proper for the security of the rights of the adverse party.

■ The Rule, on its face, however, applies to situations in which a notice of appeal is filed *after*—rather than before—the preliminary injunction order has been entered. Where the notice of appeal has already been filed, Rule 62(c) permits the alteration, or issuance of that injunction in the face of an appeal, merely to preserve the status quo. *Kidder, Peabody & Co., Inc. v. Maxus Energy Corp.*, 925 F.2d 556, 565 (2d Cir.1991), *cert. denied*, 501 U.S. 1218, 111 S.Ct. 2829, 115 L.Ed.2d 998 (1991) (affirming issuance of injunction by district court even after notice of appeal was filed because "[t]he injunction expressly provided that it was issued to preserve the status quo [pending the appeal]"); *McClatchy Newspapers v. Central Valley Typo., Etc.*, 686 F.2d 731, 734–35 (9th Cir. 1982), *cert. denied*, 459 U.S. 1071, 103 S.Ct. 491, 74 L.Ed.2d 633 (1982) ("Rule 62(c) codifies the 'long established' and narrowly limited right of a trial court 'to make orders appropriate' *to preserve the status quo* while the case is pending in [an] appellate court . . . [A]fter appeal a trial court may, if the purposes of justice require, preserve the status quo until decision by the appellate court . . . But it may not finally adjudicate substantial rights directly involved in the appeal") (citations omitted) (emphasis added); 11 Charles A. Wright, Arthur R. Miller & Mary Kay Kane, Federal Practice and Procedure § 2904 (1995) ("Grant of an injunction pending appeal may be desirable *in order to continue the status quo* until the dispute has been finally resolved. . . . When there is reason to believe that an appeal will be taken, there is no reason why the court should not make an order preserving the *status quo* during the expected appeal") (emphasis added); 7 J. Moore, Moore's Federal Practice ¶ 62.05, at 62–19 to 20 (2d ed. 1979) (stating Rule 62(c) is "merely expressive of a power inherent in the court *to preserve the status quo* where, in its sound discretion, the court

deems the circumstances so justify") (emphasis added). Plaintiffs even concede this point. (Pls.'s Mem. at 10) ("A trial court has a long established right to made orders appropriate *to preserve the status quo* while a case is pending on appeal") (emphasis added).

Nonetheless, the Third Circuit has held that, in very limited circumstances, the district court may rely upon Rule 62(c) to *alter* the status quo but only in order to "preserve the integrity of the proceedings in the court of appeals, the forum to which the dispute has been transferred by the appeal." *Ortho Pharmaceutical Corp. v. Amgen, Inc.*, 887 F.2d 460, 464 (3rd Cir.1989) (affirming modification by district court of its preliminary injunction order after appeal had been taken). The rule enunciated in *Amgen* is in keeping with the spirit of Rule 62(c) jurisprudence; namely, the district court may issue orders after the transfer of jurisdiction when necessary to facilitate the appeal.

The "status quo" in this litigation is a situation in which the Plaintiffs do not know, because the Commonwealth has failed to declare, whether Pennsylvania is an opt-in jurisdiction and, thus, which statute of limitations applies to their habeas actions. What Plaintiffs seek in their Motion for Preliminary Injunctive and Declaratory Relief Pending Appeal is an alteration or modification, rather than a preservation, of that status quo. As Defendants Ridge and Horn rightly note, "Plaintiffs have alleged that they are presently suffering from uncertainty as to the applicable statute of limitations. They seek an injunction to end that uncertainty, not to preserve it." (Defs.' Reply to Pls.' Mem. at 5 n. 2).

Finally, Plaintiffs have not argued that failure to enter this injunction will affect the disposition of this case on appeal and that, therefore, an injunction is necessary to preserve the "integrity" of the proceedings, as per *Amgen*. In sum, the Court cannot rely upon Rule 62(c) to retain jurisdiction pending appeal.

This Court, therefore, has no jurisdiction to entertain Plaintiffs' Motion for Prelimi-

nary Injunctive and Declaratory Relief Pending Appeal.