

2008 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

6-30-2008

# In Re: Advanced Elec

Precedential or Non-Precedential: Non-Precedential

Docket No. 07-3020

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2008

Recommended Citation

"In Re: Advanced Elec " (2008). *2008 Decisions.* Paper 954.
http://digitalcommons.law.villanova.edu/thirdcircuit_2008/954

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova University School of Law Digital Repository. It has been accepted for inclusion in 2008 Decisions by an authorized administrator of Villanova University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 07-3020
_____

IN RE:  ADVANCED ELECTRONICS, INC.,

Debtor

JOHN H. DORAN, Trustee for Advanced Electronics, Inc.,

Appellant

v.

PHILIP ALAN COURTRIGHT;
PATRICIA S. COURTRIGHT;

_____

On Appeal from the United States District Court
for the Eastern District of Pennsylvania
(D.C. No. 06-cv-05323)
District Judge:  Honorable Stewart Dalzell

_____

Argued June 4, 2008
Before:  FISHER, JORDAN and VAN ANTWERPEN, *Circuit Judges*.

(Filed:  June 30, 2008)

Robert C. Nowalis (Argued)
Doran, Nowalis & Doran
69 Public Square
700 Northeastern Bank Building
Wilkes-Barre, PA  18701
        *Attorney for Appellant*

Robert L. Knupp (Argued)
Knupp, Kodak & Imblum
407 North Front Street
P.O. Box 630
Harrisburg, PA  17108
        *Attorney for Appellee, Philip Alan Courtright*

Deborah A. Hughes (Argued)
2080 Linglestown Road, Suite 106
P.O. Box 961
Harrisburg, PA  17108
        *Attorney for Appellee, Patricia S. Courtright*

_____

OPINION OF THE COURT
_____

FISHER, *Circuit Judge*.

The case before us has a long and convoluted history.  The immediate subject of this appeal is the motion of John Doran, bankruptcy trustee for Advanced Electronics, Inc., to hold Philip and Patricia Courtright in contempt for violation of a consent order.  The Bankruptcy Court initially granted the Trustee's motion for contempt, but upon the Courtrights' motion for reconsideration, the Bankruptcy Court vacated the contempt order and denied the motion.  The District Court affirmed the Bankruptcy Court's denial.  The Trustee appeals.  For the reasons that follow, we will vacate the District Court's order and remand.

I.

We write exclusively for the parties, who are familiar with the factual context and legal history of this case. Therefore, we will set forth only those facts necessary to our analysis.

In 1989, three creditors filed an involuntary bankruptcy petition against Advanced Electronics, Inc. ("Advanced"). The appellant, John Doran, Esq. ("Trustee"), was appointed Trustee of the bankruptcy estate. He commenced an adversary action on behalf of Advanced against spouses Philip and Patricia Courtright ("the Courtrights"), officers and directors of Advanced, alleging breach of fiduciary duty and conversion. On July 29, 1996, the Bankruptcy Court for the Middle District of Pennsylvania entered a judgment against the Courtrights in the amount of over $1.4 million.

The Courtrights appealed to the District Court. Additionally, they filed a motion in the Bankruptcy Court for stay and supersedeas pending appeal. After a hearing, the Trustee and the Courtrights worked out and entered into a Consent Order that the Bankruptcy Court approved in October 1996 ("1996 Consent Order").

The 1996 Consent Order provided that because the Courtrights did not have the money to post a supersedeas bond, they would deposit their shares of two companies, Marvier Advertising Co. and 2595 Lycoming Creek, Inc., with the United States

3

Marshal.[1] The shares would be held in lieu of a supersedeas bond, and therefore, the 1996 Consent Order contained several provisions to safeguard the value of the shares. The Courtrights were enjoined from transferring, conveying, or otherwise diminishing the value of the shares or the corporate property. They were to notify the Trustee immediately if any event occurred that diminished their value. The Courtrights were also forbidden from making any expenditure over $1000 without giving notice to the Trustee. They were required to provide the Trustee with monthly statements of receipts and disbursements.

The 1996 Consent Order further provided that the Trustee was stayed from executing upon the Courtrights' property "pending the Appeal." The stay was "conditioned upon the Courtrights' full compliance with the terms of [the] Consent Order." If the District Court affirmed or otherwise entered a money judgment against the Courtrights, the Trustee would be entitled to satisfy the judgment by liquidating the shares of Marvier and Lycoming Creek or the corporations' property. If the District Court reversed, the Marshal was to return the shares to the Courtrights.

In October 1997, the District Court entered an order ("1997 Affirmance") that affirmed the Bankruptcy Court's 1996 judgment against the Courtrights and the

_____

[1]Philip and Patricia jointly owned all of the outstanding shares of Marvier. As for Lycoming Creek, Philip was the sole owner of 510 shares and Patricia was the sole owner of 490 shares (there were no other outstanding shares). Each corporation owned one parcel of commercial real estate in Williamstown, PA. Both of these commercial properties were rented out, generating a combined monthly income of over $10,000.

4

Courtrights subsequently appealed to this Court. They filed a motion in the District Court for a stay and supersedeas pending appeal. In March 1998, the District Court entered an order that granted the motion and directed that the terms and conditions of the original 1996 Consent Order would "continue in full force and effect during the pendency of the appeal of this case before the Court of Appeals for the Third Circuit."

On June 29, 1999, we issued an opinion and judgment affirming the District Court. The Courtrights then filed a petition for rehearing, which we denied. We issued our mandate, thus concluding the appeal, on October 12, 1999. Meanwhile, during the pendency of the appeal, Philip Courtright filed for personal bankruptcy on July 2, 1999.

Because the appeals in the District Court and our Court affirmed the Bankruptcy Court's 1996 judgment against the Courtrights, the Marshal continued to hold the shares of Marvier and Lycoming Creek, as directed by the 1996 Consent Order. The Trustee did not liquidate the shares or the corporate property as contemplated in the 1996 Consent Order. Instead, he filed several motions in Philip Courtright's personal bankruptcy case (motions to dismiss or convert the case, motions for relief from stay, and objections to exemptions or discharge). After Patricia Courtright filed for bankruptcy in 2003, the Trustee filed a motion for relief from stay in her case. All of these motions were filed between 1999 and 2003.[2]

---

[2]Patricia Courtright was discharged from bankruptcy in January 2008; she filed a motion to reopen in February 2008, and her case remains open. Similarly, Philip Courtright was discharged from bankruptcy in January 2008; he filed a motion to reopen

5

The impetus for the Trustee's motion for contempt, which is the subject of this appeal, is the disposition of the real estate owned by the Courtrights' companies – the same companies whose shares they had posted in lieu of a supersedeas bond. The real estate transfers involved two companies that Philip Courtright's father owned: Tri Co. Realty, Inc. and TC Construction and Development Co. Tri Co. Realty obtained an assignment of the mortgage on the Marvier property and later foreclosed. TC Construction and Development bought the Lycoming Creek property at a tax sale after Lycoming Creek stopped paying real estate taxes.[3]

The Courtrights did not inform the Trustee or the Bankruptcy Court of these proceedings. The Trustee claims that he did not learn of the sales until a creditors' meeting in late 2003.

In October 2005, approximately two years later, the Trustee filed a motion in the Bankruptcy Court to hold the Courtrights in contempt for violation of the original 1996 Consent Order. After a hearing, Bankruptcy Judge Thomas M. Twardowski granted the motion for contempt in January 2006. He concluded that after the Courtrights' appeal ended, the 1996 Consent Order survived and the parties continued to be bound by its terms.

---

in February 2008, and his case also remains open.

[3]At the tax sale, TC Construction and Development was represented by Phillip Courtright, who was acting as the agent for his father's company.

The Courtrights moved for reconsideration. In September 2006, Judge Richard E. Fehling, successor to Judge Twardowski (who had retired), entered an order that granted the motion for reconsideration. On reconsideration, Judge Fehling vacated Judge Twardowski's contempt order and denied the Trustee's motion for contempt. Judge Fehling concluded, contrary to Judge Twardowski's reasoning, that the 1996 Consent Order remained in effect only through the pendency of the appeal. The Trustee moved for reconsideration, and, in an order entered on October 31, 2006 ("2006 Order"), Judge Fehling denied that motion. The Trustee then appealed to the District Court for the Eastern District of Pennsylvania.

The District Court, in a May 2, 2007 ruling ("2007 Ruling") issued by Judge Stewart Dalzell, affirmed the Bankruptcy Court's 2006 Order denying the Trustee's motion for reconsideration. The 2007 Ruling was in the form of an order that contained extensive discussion of the reasons behind the District Court's decision to affirm the Bankruptcy Court. In particular, the Court articulated the following reasons:

First, it stated that when the Courtrights' appeal to this Court ended, the 1996 Consent Order expired and the Bankruptcy Court no longer had jurisdiction to take action in the case. Thus, the Bankruptcy Court had no power to enter its January 2006 order holding the Courtrights in contempt of the expired Consent Order.

7

Second, the District Court stated that under the ordinary rules of contract interpretation, the Consent Order was meant to remain in effect only until the completion of the appeals.

Third, the District Court stated that the Consent Order was created in lieu of a supersedeas bond. Because a supersedeas bond is meant to protect the appellee's interests during the pendency of an appeal, the Court concluded that the Consent Order should likewise be in effect only during the pendency of the Courtrights' appeal.

Finally, the District Court noted that after the conclusion of the Courtrights' appeal, the Trustee never executed upon the shares of Marvier and Lycoming Creek or took any action to enforce the Consent Order until he filed the motion for contempt. Responding to the Trustee's argument that he could not execute upon the shares due to the automatic stay in Philip Courtright's personal bankruptcy, the Court stated that the U.S. Marshal was holding the shares in custodia legis, and therefore they were not part of the bankruptcy estate and were not subject to the stay.

The Trustee filed a motion for reconsideration, and the District Court denied the motion on June 7, 2007. The District Court clarified that whether the automatic stay was in effect was immaterial to its resolution of the appeal because the "lower courts" did not have the jurisdictional authority to enter orders while the case was on appeal. The Court concluded that the Trustee had not shown any reason why it should grant a motion for reconsideration, so it denied the motion. The Trustee filed this timely appeal.

8

II.

We have jurisdiction under 28 U.S.C. § 1291. The facts are not in dispute, and so we exercise plenary review over the various legal issues presented in this appeal. *Harris v. City of Phila.*, 137 F.3d 209, 212 (3d Cir. 1998) (exercising plenary review over trial court's construction of a consent order); *Wujick v. Dale & Dale, Inc.*, 43 F.3d 790, 792 (3d Cir. 1994) (exercising plenary review over the question of lower courts' jurisdiction); *Washington v. Heckler*, 756 F.2d 959, 962 (3d Cir. 1985) (As a "basic proposition[], . . . the [trial] judge's conclusions on questions of law are subject to plenary review.").

III.

A.

The District Court's 2007 Ruling explicitly stated that it was affirming the Bankruptcy Court's 2006 Order. As noted, the District Court's Ruling contained an extensive discussion of its reasons. The District Court stated that the Bankruptcy Court lacked the power to rule on the Trustee's 2006 contempt motion because it had lost jurisdiction to enforce the original 1996 Consent Order when the Courtrights' appeal was decided by the District Court in 1997. According to the District Court, "at the time the lower courts issued and later continued the Consent Order, they could only offer relief that protected [the Trustee's] interests *pending the appeal*." *See App.* at 20. When the Bankruptcy Court's 1996 judgment against the Courtrights was being appealed, the Bankruptcy Court only had the power to order a stay or an injunction *pending that appeal*.

9

The Trustee nevertheless argues that the Bankruptcy Court had the power to hold the Courtrights in contempt because after we issued our mandate ending their appeal in 1999, jurisdiction returned "to the forum whence it came."

The District Court was correct when it stated that the Bankruptcy Court lacked jurisdiction to rule on the Trustee's motion to hold the Courtrights in contempt of the 1996 Consent Order. However, our reasoning is somewhat different than that of the District Court. In *Venen v. Sweet*, 758 F.3d 117 (3d Cir. 1985), we explained the shifting of jurisdiction between trial and appellate courts:

> [T]he timely filing of a notice of appeal is an event of jurisdictional significance, immediately conferring jurisdiction on a Court of Appeals and divesting a district court of its control over those aspects of the case involved in the appeal. *Griggs v. Provident Consumer Disc. Co.*, 459 U.S. 56, 58 (1982); *United States v. Leppo*, 634 F.2d 101, 104 (3d Cir.1980). "Divest" means what it says-the power to act, in all but a limited number of circumstances, has been taken away and placed elsewhere.

*Id.* at 120-21 (parallel citations omitted). We also enumerated some of the "limited number of circumstances" in which a district court has the power to act after an appeal is filed:

> A district court, during the pendency of an appeal is not divested of jurisdiction to determine an application for attorney's fees. Neither is it without jurisdiction to issue orders regarding the filing of bonds or supersedeas bonds, or to modify, restore, or grant injunctions. *See* FED. R. APP. P. 7 and 8 . . . . Although we do not suggest that these are the only circumstances in which a district court retains power to act, we reiterate that the instances in which such power is retained are limited.

10

*Id.* at 121 n.2 (citations omitted).  These jurisdictional principles are prudential rules that prevent "the confusion and inefficiency which would . . . result were two courts to be considering the same issue . . . simultaneously."  *Id.* at 121.

Applying these principles to this case, we conclude that once the Courtrights appealed the 1996 judgment to this Court in 1998, the Bankruptcy Court was clearly divested of its jurisdiction over the terms of the 1996 Consent Order.  This is because the matter was on appeal to us from the District Court, and because the District Court in 1998 entered its own order adopting and continuing the terms of the 1996 Consent Order ("1998 Continuation Order").  Accordingly, once the appeal to this Court was over, only the District Court, and not the Bankruptcy Court, would have had the power to enter a contempt order or enforce the terms of its 1998 Continuation Order.

Furthermore, that power was limited to the approval of a supersedeas bond or entry of a stay or injunction *pending appeal to this Court*.  To retrace the history of the Consent Order, the 1996 Consent Order provided for the disposition of the Courtrights' shares of stock "in the event that a valid, final order is entered by the United States District Court." When the District Court issued its 1997 Affirmance upholding the Bankruptcy Court's determination that the Courtrights were liable to the Advanced bankruptcy estate, the Bankruptcy Court's 1996 Consent Order had fully performed its supersedeas function.

The Courtrights appealed to our Court and filed a motion for stay and supersedeas in the District Court.  The District Court granted their motion with its March 10, 1998

11

Continuation Order. The 1998 Continuation Order directed that "[t]he terms and conditions of the [1996] consent order shall continue in full force and effect during the pendency of the appeal . . . before the Court of Appeals for the Third Circuit." Although the District Court order adopted the terms and conditions of the 1996 Consent Order, the District Court's 1998 Continuation Order superseded, replaced, and adopted the terms of the1996 Consent Order. If there was power to enforce the terms of the 1996 Consent Order, it was with the District Court, not the Bankruptcy Court.

The Trustee argues that after we issued our mandate in 1999 ending the Courtrights' appeal, jurisdiction returned to the Bankruptcy Court. However, the Trustee overlooks the fact that this case came to us on appeal from the District Court and not from the Bankruptcy Court, and the record does not show any remand from the District Court to the Bankruptcy Court. He provides no explanation of how our 1999 affirmance could have resuscitated the Bankruptcy Court's original 1996 Consent Order, which only pertained to the appeal to the District Court. The Trustee analogizes the 1996 Consent Order in this case to a consent order that settles an antitrust case and requires the parties to conform their conduct indefinitely to some standard. However, his analogy is inapt because both the 1996 Consent Order and the 1998 Continuation Order in this case were meant to function in lieu of a supersedeas bond, which has a clear end point: the end of the appeal process.

Thus, for the reasons stated, we agree with the District Court that in 2006 the Bankruptcy Court did not have the power to rule on the Trustee's motion to hold the Courtrights in contempt of the terms of the 1996 Consent Order.[4] The Bankruptcy Court lacked jurisdiction, so Judge Fehling should have dismissed the Trustee's motion. Therefore, we will vacate the District Court's ruling affirming the Bankruptcy Court's decision to deny the motion. As explained, we do so because the Bankruptcy Court lacked jurisdiction to act and the matter was never remanded to it after the prior appeal.

B.

Despite our agreement in part with the District Court's 2007 ruling, we disagree with its statement that the Trustee could have executed against the stock at any time after the Courtrights' appeal ended in 1999. Because this issue will arise if the Trustee refiles his contempt motion in the proper court, and because the District Court and both parties failed to analyze the question properly, we provide the following guidance.

The automatic stay provisions of 11 U.S.C. § 362 are part of the Bankruptcy Code of 1978, which replaced the Bankruptcy Act of 1898. *Borman v. Raymark Indus., Inc.*, 946 F.2d 1031, 1032 (3d Cir. 1991). The Bankruptcy Act's automatic stay provisions,

---

[4]In this appeal to our Court, Philip and Patricia filed a joint brief that consisted of arguments common to both of them. At oral argument, however, Patricia raised arguments applicable only to her; she claimed that she could not be held in contempt because she was not liable for her spouse's actions. This argument was not raised in her opening brief and is therefore waived. *F.D.I.C. v. Deglau*, 207 F.3d 153, 169-70 (3d Cir. 2000).

13

which were in effect until 1978, only applied in proceedings involving property of the estate. *Id.* at 1036. Like the Bankruptcy Act, the Bankruptcy Code provides for an automatic stay of proceedings involving estate property. 11 U.S.C. § 362(a)(3) (A bankruptcy petition "operates as a stay, applicable to all entities, of . . . any act to obtain possession of property of the estate."). In addition, the Bankruptcy Code created a broader type of stay that applies to actions brought against the debtor, regardless of whether those actions involve property of the estate. *Id.* § 362(a)(1) (A bankruptcy petition "operates as a stay, applicable to all entities, of . . . the commencement or continuation, including the issuance or employment of process, of a judicial, administrative, or other action or proceeding against the debtor."); *Borman*, 946 F.2d at 1036.

In *Borman*, we applied 11 U.S.C. § 362(a)(1) and determined that an appeal should be stayed, despite the fact that the judgment debtor had posted a supersedeas bond prior to filing for bankruptcy. *Id.* at 1037. We explained that § 362(a)(1) is broader than the stay provisions it replaced:

> [While the former stay provisions] were directed solely at protecting property of the estate, the current provisions provide a "breathing spell" for the debtor which stops all collection efforts. This breathing spell encompasses a stay of an action brought directly against the debtor, even when the funds to satisfy a judgment may ultimately come from another source. The automatic stay was designed to prevent certain creditors from gaining a preference for their claims against the debtor; to forestall the depletion of the debtor's assets due to legal costs in defending proceedings against it; and, in general, to avoid interference with the orderly liquidation or rehabilitation of the debtor. These concerns are implicated whenever an

14

action is instituted directly against the debtor, although they arguably have more force when an action directly implicates property of the estate. The policy behind the automatic stay is applicable even when it is clear that another party will ultimately be responsible for payment as the result of a supersedeas bond.

*Id.* at 1036.[5]

In *Borman*, we had not yet disposed of the appeal when Raymark filed for bankruptcy. *Id.* at 1032. This case is different, because by the time Philip filed for bankruptcy, we had issued our opinion and judgment (although the mandate did not issue for three more months). But the fact that the appeal had progressed further in this case does not affect the applicability of the *Borman* rule. When Philip filed for bankruptcy on July 2, the mandate had not yet issued, and the parties' obligations were therefore not yet fixed. *Finberg v. Sullivan*, 658 F.2d 93, 97 n.5 (3d Cir. 1981). Any action by the Trustee at that point to execute against the shares would have been premature.

In light of our *Borman* opinion, the District Court erred when it concluded that the Trustee could have proceeded against the shares upon the termination of the appeal. The Trustee could not have executed against the shares due to the § 362(a)(1) automatic stay.[6]

---

[5]In *Borman*, we did not decide whether a supersedeas bond is property of the bankruptcy estate. *Borman v. Raymark Indus., Inc.*, 946 F.2d 1031, 1035 (3d Cir. 1991). We were not required to reach that question because we concluded that "§ 362(a)(1) stays pending proceedings brought against the debtor, regardless of whether they involve property of the estate." *Id.* Once again, as in *Borman*, we are not required to reach the question, because our disposition of this case rests on our conclusion that the Bankruptcy Court lacked jurisdiction to entertain the Trustee's contempt motion.

[6]By ruling that the § 362 stay applied, we do not mean to endorse the Trustee's dilatory conduct in this case. To cite only one example, roughly two years elapsed

15

C.

For the most part, the District Court correctly construed the 1996 Consent Order. The terms of the Order were meant to last during the pendency of the appeal because: (1) the District Court's 1998 Continuation Order granting the Courtrights' motion for stay and supersedeas extended the 1996 Consent Order's terms to the appeal to our Court; (2) the original Consent Order's terms show that it was meant to apply to the appeal, *Fox v. U.S. Dep't of Hous. & Urban Dev.*, 680 F.2d 315, 319 (3d Cir. 1982) (consent orders are "construed according to traditional precepts of contract construction"); and (3) the Order functioned in lieu of a supersedeas bond, *Poplar Grove Planting & Ref. Co. v. Bache Halsey Stuart, Inc.*, 600 F.2d 1189, 1190-91 (5th Cir. 1979) ("The purpose of a supersedeas bond is to preserve the status quo . . . pending appeal."). Accordingly, the supersedeas only pertained to and existed during the appeal.

Nevertheless, as previously noted, certain provisions of the 1996 Consent Order expressly provided for the Trustee to satisfy the judgment against the Courtrights by liquidating the shares of Marvier and Lycoming Creek or the corporations' property. If Philip had not filed for personal bankruptcy, thus triggering the § 362 automatic stay, the terms of the 1996 Consent Order, as continued by the 1998 Continuation Order, would

---

between his discovery of the sale of the corporate properties and his filing of the contempt motion in Bankruptcy Court. We express no opinion as to whether his conduct would have any bearing on the District Court's decision to grant a contempt motion he might file in that court.

16

have come to an end when our appeal ended, and the Trustee could have proceeded to liquidate the shares. Because he did file for bankruptcy, the Trustee's execution against the shares was stayed, and the 1998 Continuation Order can fairly be read to allow for its continued effect in order to protect the value of the shares, by virtue of the stay. When the bankruptcies ultimately end, the Trustee will be free to satisfy the judgment.[7]

## IV.

For the foregoing reasons, we will vacate the District Court's order affirming the Bankruptcy Court's judgment and remand for further proceedings in accordance with this opinion.

---

[7]Upon remand, the District Court will have to determine whether the intervening judicial and tax sales were ineffective because of the bankruptcy stays. We express no opinion on this subject.